**Robert Edward JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–05–01239–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

May 10, 2007.

Mark McIntyre, Houston, for appellant.

B. Warren Goodson, Jr., Galveston, for appellee.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## OPINION

CHARLES W. SEYMORE, Justice.

A jury found appellant, Robert Jones, guilty of sexual assault. The trial judge found the first enhancement count true, the second enhancement count not true, and assessed a life sentence.[1] In three issues, appellant contends the trial court erred by (1) not submitting his requested jury charge on the lesser-included offense of attempted sexual assault, (2) denying his motion to suppress evidence of blood and fingerprints because consent allegedly was not voluntary, and (3) assessing a life

---

1. In appellant's first trial for this indictment, he was convicted of sexual assault by a jury. *Jones v. State*, No. 14–04–00107–CR, 2005 WL 5341160 (Tex.App.-Houston [14th Dist.] March 15, 2005, no pet.) (mem. op.). On appeal, this court reversed and remanded for a new trial because appellant's Sixth Amendment right to self-representation was violated. *Id.* This is an appeal from the second trial at which appellant was *pro se.*

sentence under section 12.42(c)(2) of the Texas Penal Code. We affirm.

## I. BACKGROUND

Appellant was accused of sexually assaulting adult-female complainant, Juanita, who was employed as a receptionist at a photography studio in Galveston. On the morning of September 24, 1998, Juanita was working alone when appellant entered the photo studio. Appellant requested a brochure. When they were alone in the store, appellant asked Juanita where the restroom was located. On the way to the restroom, appellant attacked Juanita. He pulled her hair, tried to blindfold her, and tied her hands behind her back with plastic straps. After locking the doors and closing the blinds, appellant shot her in the neck with a stun gun. Appellant told her to lay down, got on top of her, tore open her blouse, took off her shoes and pants, and tore off her underwear. Appellant told her to "suck his dick" and inserted his penis in her mouth. He also attempted to penetrate her vagina. Appellant ejaculated on her face. He then made her turn toward a wall, removed the blindfold, told her to call the police or do whatever she wanted, and left the store. Juanita called the studio owner and told him she had been attacked. Jan Marie Johnson, who had been in the parking lot and saw appellant leaving, entered the studio and asked Juanita, "Did that man do that?" After Juanita said "yes," Johnson called the police.

Norman Giles [2], a Galveston Police lieutenant, came to the photography studio and spoke with Juanita. Lieutenant Giles investigated the case. When appellant became a suspect, Lieutenant Giles traveled to Louisiana where appellant was incarcer-ated for aggravated sexual assault. During Lieutenant Giles's second visit, appellant signed a "waiver of search" for body fluids. Appellant gave Lieutenant Giles a blood sample, photographs, and fingerprints.

At trial, Galveston Police Officer Fos testified that latent fingerprints lifted from the store brochure matched appellant's left index finger. Javier Flores, a forensic scientist, testified he compared the DNA in semen found on Juanita with the DNA in appellant's blood sample and concluded the chance that the attacker was someone other than appellant was one in six billion. Appellant was tried, and a jury convicted him of sexual assault.

## II. REQUEST FOR JURY INSTRUCTION ON LESSER-INCLUDED OFFENSE

In his first issue, appellant contends the trial court erred by not submitting his requested jury instruction pertaining to the lesser-included offense of attempted sexual assault. Specifically, appellant contends the trial judge should have included attempted sexual assault in the jury charge because the complainant testified she told a private investigator appellant did not insert his penis in her mouth. The State argues that the complainant's prior inconsistent statement is not direct substantive evidence that would support a lesser-included offense in the jury charge. We agree with the State.

■ We apply a two-pronged test to determine whether a lesser-included offense instruction should be included in a jury charge. *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App.1993) (citing *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App.1981)). First, the lesser-

2. At the time of trial, Lieutenant Giles was employed as an attorney in Houston. We refer to him as "Lieutenant Giles" because he was employed in that capacity in the context of this case.

included offense must be included within the proof necessary to establish the offense charged. *Id.* Second, *some evidence* must exist in the record that if the defendant is guilty, he is guilty only of the lesser offense. *Id.*

■ Under the first prong, both parties agree that attempted sexual assault is a lesser-included offense of sexual assault. A person commits sexual assault if he intentionally or knowingly causes penetration of the mouth of another person by his sexual organ without that person's consent. TEX. PENAL CODE ANN. § 22.011(a)(1)(B) (Vernon 2003). Article 37.09(4) of the Code of Criminal Procedure provides a lesser-included offense consists of an attempt to commit the charged offense. TEX.CODE CRIM. PROC. ART. 37.09 (Vernon 2006).

■ Under the second prong of the test we consider whether there is some evidence in the record supporting the contention that if appellant is guilty, he is guilty only of the lesser offense, attempted sexual assault. *Rousseau,* 855 S.W.2d at 672. As long as there is some evidence "directly germane" to a lesser-included offense, then an instruction on the lesser-included offense is warranted. *Jones v. State,* 984 S.W.2d 254, 257 (Tex.Crim.App.1998) (citing *Bignall v. State,* 887 S.W.2d 21, 23 (Tex.Crim.App.1994)).

■ Juanita testified regarding details of the sexual assault. She stated that appellant inserted his penis in her mouth. She recalled meeting appellant's private investigator during December 2003. During her trial testimony, she admitted that she told the investigator appellant did not insert his penis in her mouth. When asked about the conflicting statements, Juanita explained that she was "scared" and "nervous" at the time she gave the statement to the investigator, "just didn't

want to think about that," and wanted to forget about what happened.

Appellant contends Juanita's testimony regarding her conflicting statements to a private investigator are sufficient to satisfy the second prong of the test. We disagree. In *Wilhoit v. State,* an aggravated rape case, the Court of Criminal Appeals concluded the trial court did not err in refusing to submit the lesser-included offense of rape based on the investigating officer's testimony that the complainant told him she "most likely thought it was a toy type gun" exhibited by the defendant. 638 S.W.2d 489, 499 (Tex.Crim.App.1982). The court explained the officer's testimony that the complainant believed the pistol was a toy gun was "more in the nature of impeachment than direct substantive evidence." *Id.* Furthermore, the First Court of Appeals followed *Wilhoit* in a factually similar case. *Caddie v. State,* No. 01–86–00010–CR, 1986 WL 10215 (Tex.App.-Houston [1st Dist.] Aug. 14, 1986, pet. ref'd) (not designated for publication). In *Caddie,* the trial court denied the defendant's request for a jury instruction on the lesser-included offense of aggravated assault. *Id.* at *1. The defendant argued that the lesser-included offense was raised by the complainant's testimony. *Id.* Specifically, the complainant testified she initially told her mother and a police detective that she had been beaten, not sexually assaulted. *Id.* She explained that at the time of the inconsistent statements, she was attempting to block the sexual assault from her mind. *Id.* Applying the *Wilhoit* holding, the First Court of Appeals concluded that the complainant's pretrial statements were inconsistent with her trial testimony; therefore, the statements were admissible for impeachment purposes. *Id.* However, the statements did not constitute direct substantive evidence of the

truth of the matter asserted. *Id.* Therefore, the *Caddie* court held the trial court properly denied the defendant's request for a jury instruction on the lesser-included offense of aggravated assault. *Id.*

Similar to the complainant in *Caddie,* Juanita asserted that at the time she uttered the inconsistent statement, she was trying to block the sexual assault from her mind. Accordingly, we conclude that Juanita's pretrial statements to the private investigator were admissible for impeachment purposes; however, her statements do not constitute direct, substantive evidence of the lesser-included offense of attempted sexual assault. *See Wilhoit,* 638 S.W.2d at 499; *Caddie,* 1986 WL 10215 at *1. Therefore, the trial court properly denied appellant's request for a jury instruction pertaining to the lesser-included offense of attempted sexual assault. Appellant's first issue is overruled.

### III. CONSENT TO SEARCH

In his second issue, appellant contends the trial court erred by denying appellant's motion to suppress evidence of his blood and fingerprints because his consent was not voluntary. Specifically, appellant contends (1) the consent form was signed in a Louisiana prison when the only pending charges for aggravated rape were in Louisiana, not Galveston County, Texas, (2) the record is silent regarding appellant's discussion with his lawyer because the State failed to introduce testimony from appellant's lawyer, who allegedly advised Lieutenant Giles that appellant consented to the search, and (3) notwithstanding the signed consent form, appellant did not give oral consent to Lieutenant Giles.

The State contends the trial court properly denied appellant's motion to suppress because appellant voluntarily consented to the search by signing the consent form. We agree.

Voluntary consent to search is a well-established exception to the warrant and probable cause requirements of the Fourth Amendment to the United States Constitution. *Montanez v. State,* 195 S.W.3d 101, 105 (Tex.Crim.App.2006) (citing *Carmouche v. State,* 10 S.W.3d 323, 331 (Tex.Crim.App.2000)). The validity of a consent to search is a question of fact to be determined from all the circumstances. *Rayford v. State,* 125 S.W.3d 521, 528 (Tex. Crim.App.2003). The federal constitution requires the State to prove the validity of consent by a preponderance of evidence, while the Texas Constitution requires the State to prove by clear and convincing evidence that consent was valid. *Id.* (citing *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex.Crim.App.2002)). At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses and their testimony. *Id.* Accordingly, the judge may believe or disbelieve all or part of a witness's testimony, even if that testimony is not controverted. *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000). In reviewing a trial court's ruling on a motion to suppress, we give almost total deference to a trial court's determination of historical facts, and we review de novo the trial court's application of the law. *Rayford,* 125 S.W.3d at 528.

Lieutenant Giles was the only witness at the suppression hearing. He testified that he traveled to Louisiana twice to meet with appellant at the Calcasieu Parish Correctional Center. On June 25, 1999, Lieutenant Giles and Sergeant Pena, another investigator from the Galveston County Police Department, met with appellant in an interview room. They talked generally about appellant's "career as a sex offender" and asked him

questions regarding his whereabouts on September 24, 1998. On July 30, 1999, Lieutenant Giles returned to Louisiana to collect blood and fingerprint samples. He contacted Louisiana authorities to schedule a hearing before a Louisiana judge. Prior to the hearing, appellant's court-appointed counsel informed Lieutenant Giles that appellant would consent to give the samples.[3] According to Lieutenant Giles, appellant reiterated his consent in open court with his attorney present.

Therefore, following the Louisiana hearing, Lieutenant Giles went to the Calcasieu County Parish Prison where he met appellant in a "general open area in the detention facility." Lieutenant Giles read the consent form, asked appellant if he understood it, and asked whether he would give a specimen that same day. Lieutenant Giles further testified that appellant was not denied anything or threatened in any way. Lieutenant Giles and David Higginbotham, a deputy working at the detention facility, witnessed appellant's signature on the consent form.

Appellant argues that he gave Lieutenant Giles samples to be used in an aggravated sexual assault case in Louisiana, not in this Galveston County case. However, the following language is in upper left corner of the consent form: "States of Texas and Louisiana; Cit[ies] of Galveston and Calcasieu Parish." "State of Texas" is typed, "and Louisiana" was handwritten next to it. The consent paragraph provides that by his signature, appellant "authorizes and permits Norman Giles of Galveston Police and nurse or other medical professional to take samples of my blood, photographs, and [finger]prints." The trial court as fact-finder was free to determine the credibility of Lieutenant Giles's

testimony. *See Rayford*, 125 S.W.3d at 528.

Appellant also contends the State failed to prove his consent was voluntary because the record is silent regarding his alleged discussion with Louisiana counsel. However, appellant does not explain or point to any evidence regarding the substance of those conversations. Moreover, appellant fails to cite legal authority in support of his argument. Therefore, this complaint is inadequately briefed and is waived. TEX.R.APP. P. 38.1(h); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex.Crim. App.2000) (finding appellant waived appellate review by failing to include argument and authorities).

Appellant also contends the samples were not voluntarily produced because he never orally gave consent to Lieutenant Giles. Appellant argues the alleged consent is based on a series of conversations between appellant and an unnamed attorney. However, appellant signed the consent form after Lieutenant Giles read it verbatim and inquired whether appellant had any questions. We conclude that Lieutenant Giles's procedure for obtaining consent to search was lawful. *See Rayford*, 125 S.W.3d at 528 (holding State proved defendant consented to a search for blood, saliva, and trace evidence on defendant's person where defendant signed a consent form after officer read it out loud, defendant said he understood it, and signed the form).

Viewing the appellate record as a whole and giving proper deference to the trial court's implied findings of historical fact, we hold the State has shown by clear and convincing evidence that appellant's consent was voluntary. *See id.* at 529. Ac-

---

**3.** The record is unclear as to what precisely transpired during the referenced "hearing" in Louisiana.

cordingly, we overrule appellant's second issue.

## IV. ASSESSMENT OF PUNISHMENT UNDER TEXAS PENAL CODE SECTION 12.42

In his third issue, appellant contends the trial court erred by assessing a mandatory life sentence under section 12.42(c)(2) of the Texas Penal Code. Specifically, appellant contends he should have been sentenced under section 12.42(b) because he was convicted of sexual assault, a second-degree felony. The State contends appellant was properly sentenced under section 12.42(c)(2) because the statutory language is clear and even if the statute is not clear, the legislative history indicates the Legislature passed the "two-strike sex offender law" with the intent to punish all two-time sex offenders with a mandatory life sentence.

Texas Penal Code section 12.42, is entitled "Penalties for Repeat and Habitual Felony Offenders" and provides, in pertinent part:

(b) If it is shown on the trial of a second-degree felony that the defendant has been once before convicted of a felony, on a conviction he shall be punished for a first-degree felony.

(c) (1) *Except as provided by Subdivision (2)*, if it is shown on the trial of a first-degree felony that the defendant has been once before convicted of a felony, on conviction he shall be punished by imprisonment in the institutional division of the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 15 years. In addition to imprisonment, an individual may be punished by a fine not to exceed $10,000.

(2) A defendant shall be punished by imprisonment in the institutional division for life if:

(A) the defendant is convicted of an offense:

(i) under Section 22.021[aggravated sexual assault] or 22.011 [sexual assault], Penal Code;

(ii) under Section 20.04(a)(4), Penal Code, if the defendant committed the offense with the intent to violate or abuse the victim sexually; or

(iii) under Section 30.02, Penal Code, punishable under Subsection (d) of that section, if the defendant committed the offense with the intent to commit a felony described by Subparagraph (i) or (ii) or a felony under Section 21.11 or 22.011, Penal Code; and

(B) the defendant has been previously convicted of an offense:

(i) under Section 43.25 or 43.26, Penal Code;

(ii) under Section 21.11, 22.011[sexual assault], 22.021 [aggravated sexual assault], or 25.02, Penal Code;

(iii) under Section 20.04(a)(4), Penal Code, if the defendant committed the offense with the intent to violate or abuse the victim sexually

\* \* \*

TEX. PENAL CODE ANN. § 12.42(b), (c) (Vernon 2003) (emphasis added).

Following a jury trial, appellant was found guilty of sexual assault, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.011 (Vernon 2003). At the sentencing hearing, the trial court found one of the enhancement paragraphs in the indictment for a previous conviction of sexual assault to be true and found the second enhancement paragraph to be false. The trial court also considered appellant's written motion to "preclude" punishment under Texas Penal Code section 12.42(c)(2).

In his written motion and at the sentencing hearing, appellant argued that he

should be sentenced under Texas Penal Code section 12.42(b) because he previously had been convicted of a felony and his trial was for a second-degree felony, sexual assault. He argued that section 12.42(c) applied to defendants previously convicted of a felony and who were on trial for a first-degree felony. He further argued that because section (b) did not contain the exclusionary language "[e]xcept as provided by Subdivision (2)," which is included in section (c)(1), section 12.42(c)(2) does not apply to a defendant on trial for a second-degree offense.

In response, the State referred the trial court to the exception phrase at the beginning of section 12.42(c)(1). The State argued that the exception phrase at the beginning of section 12.42(c)(1) means the mandatory life sentence for sex offenders who have committed the specified sex crimes twice, is an exception to the general first-degree felony sentence enhancement provision in section 12.42(c)(1). If a case does not fall under the section 12.42(c)(2) category requiring a mandatory life sentence, then "it's only a first-degree felony" under 12.42(c)(1). The trial judge agreed with the State's interpretation and denied appellant's motion. In sentencing appellant, the trial judge applied section 12.42(c)(2) and assessed a mandatory life sentence, stating: "Under the statute discussed and the motion—your motion and the response by the State, the Court is hereby assessing punishment in conformity with the statute at life imprisonment in the Texas Department of Criminal Justice, Institutional Division."

Appellant contends he should have been sentenced under section 12.42(b), the gen-eral enhancement provision for a defendant on trial for a second-degree felony because he was on trial for a second-degree felony, sexual assault, and was previously convicted of a felony. Under section 12.42(b), the trial court would assess punishment utilizing the range for a first-degree felony instead of a mandatory life sentence under section 12.42(c)(2). Persons sentenced under section 12.42(b) are punished for a first-degree felony which warrants imprisonment for life or for any term of not more than ninety-nine years or less than five years. *See* TEX. PENAL CODE ANN. § 12.42(b); TEX. PENAL CODE ANN. § 12.32(a) (Vernon 2003).

Appellant argues that the language in section 12.42(c)(1) "[e]xcept as provided by subdivision (2)" denominates section 12.42(c)(2) as an exception to the general sentence enhancement provisions pertaining to a defendant on trial for a first-degree felony under section 12.42(c)(1). He suggests that section 12.42(c)(2) contains "two exceptions" to 12.42(c)(1). The "first exception" occurs when a person is convicted of aggravated sexual assault or sexual assault and has a prior conviction for a sexual offense such as aggravated sexual assault or sexual assault. He argues that the "second exception" to section 12.42(c)(1) occurs when a defendant is convicted of a felony and has two prior sequential felony convictions. Under the "first exception," the trial court must sentence a defendant to life imprisonment. Under the "second exception," a defendant may be sentenced to either life or no more than ninety-nine years or less than twenty-five years.[4]

4. In support of his contention that section 12.42(c)(2) contains "two exceptions," appellant incorrectly relies on portions of section 12.42 which are not located under section 12.42(c)(2). The "first exception" appellant articulates is actually the entire subsection 12.42(c)(2). Appellant incorrectly concludes that it is only part of section 12.42(c)(2)(A). The "second exception" appellant postulates is actually located in section 12.42(d). Appellant incorrectly cites it as "section

Appellant further contends he should not have been sentenced under 12.42(c)(2) because the general enhancement provision for second-degree felonies in section 12.42(b) does not begin with the phrase, "[e]xcept as provided by Subdivision (2)," as section 12.42(c)(1) begins. Therefore, he argues the mandatory life sentence contained in section 12.42(c)(2) is only an exception to the general first-degree felony sentence enhancement provision in section 12.42(c)(1) and not an exception to the general second-degree felony sentence enhancement provision in section 12.42(b).

In response, the State contends Penal Code section 12.42(c)(1) and (2) is clear and unambiguous. The proper sentence is a mandatory life sentence when a defendant is convicted of sexual assault under Penal Code section 22.011 and has a prior conviction for sexual assault or aggravated sexual assault. Without conceding lack of clarity in the Penal Code, the State further contends it would be absurd to conclude that the Legislature did not intend to incorporate the second-degree felony sexual assault in the mandatory life sentence portion of the statute.[5]

▮▮▮▮ Our interpretation should effectuate the collective intent or purpose of the legislators who enacted the legislation. *Griffith v. State,* 116 S.W.3d 782, 785 (Tex. Crim.App.2003) (citing *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991)). First, we consider the literal text of the statute and attempt to discern the fair, objective meaning of the text at the time of its enactment. *Boykin,* 818 S.W.2d at 785. Where the statute is clear and unambiguous, we must assume the Legislature meant what it expressed, and it is not for

the courts to add or subtract from a statute. *Id.* "If the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then *and only then,* out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such *extra* textual factors as executive or administrative interpretations of the statute or legislative history." *Id.* at 785–86 (emphasis in original).

According to the literal text, Penal Code section 12.42(b) clearly provides the general enhancement sentencing guidelines relative to a defendant on trial for a second-degree felony who was previously convicted of a felony. TEX. PENAL CODE ANN. § 12.42(b). Penal Code Section 12.42(c)(1) begins with the language, "[e]xcept as provided by Subdivision (2)," before it addresses a defendant who is on trial for a first-degree felony. TEX. PENAL CODE ANN. § 12.42(c)(1). This phrase directs the reader to section 12.42(c)(2) before consideration of the language that pertains to a defendant on trial for a first-degree felony. Therefore, the language "[e]xcept as provided by Subdivision (2)" requires application of section 12.42(c)(2) separately from section 12.42(c)(1). Penal Code section 12.42(c)(1) provides the general enhancement provision for a first-degree felony, while Penal Code section 12.42(c)(2) provides a separate sentence enhancement provision for two-time sex offenders.

Pursuant to Texas Penal Code section 1.05(b), certain sections of the Code of Construction Act apply unless a different construction is required contextually.[6] *See*

---

12.42(c)(2)(B)(d)." Section 12.42(d) is not a subsection of section 12.42(c).

5. The State does not address the relationship between Penal Code section 12.42(c)(2) and section 12.42(b).

6. "Unless a different construction is required by the context, Sections 311.011, 311.012, 311.014, 311.015, and 311.021 through 311.032 of Chapter 311, Government Code (Code of Construction Act), apply to the con-

Tex. Penal Code Ann. § 1.05(b) (Vernon 2003). We are required to presume by enactment that all words within a statute are intended to be effective, and the language therein will create a just and reasonable result. *See* Tex. Gov't Code Ann. § 311.021 (Vernon 2005). If a general provision conflicts with a specific provision, the provisions shall be construed, if possible, to give effect to both. Tex. Gov't Code Ann. § 311.026(a) (Vernon 2005); *State v. Mancuso,* 919 S.W.2d 86, 88 (Tex.Crim. App.1996). If we are unable to reconcile statutory provisions, the specific statute will prevail as an exception to the general statute, unless the general statute is the later enactment and the legislature's manifest intent is that the general provision prevail. Tex. Gov't Code Ann. § 311.026(b) (Vernon 2005); *Mancuso,* 919 S.W.2d at 88.

▪ Section 311.026 is a codification of the common law doctrine of *pari materia. Burke v. State,* 28 S.W.3d 545, 547 n. 2 (Tex.Crim.App.2000). "The rule of *pari materia* is nothing more than a principle of statutory interpretation, a means of devining [sic] and giving full effect to legislative intent." *Id.* at 546–47 (quoting *Mills v. State,* 722 S.W.2d 411, 413 (Tex.Crim.App. 1986)). *Pari materia* provides that "[w]here one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if pos-

sible; but if there is any conflict, the latter will prevail." *Id. Pari materia* only applies if the two statutes have the same purpose or object. *Id.* at 547.

▪ We find Penal Code section 12.42(b) and Penal Code section 12.42(c)(2) to be in *pari materia* because they have the same purpose of enhancing the sentence of a convicted felon who previously committed a felony. Therefore, we will apply the doctrine of *pari materia* as codified in Texas Government Code section 311.026. Section 12.42(b) is the general sentencing enhancement provision for defendants on trial for a second-degree felony. *See* Tex. Penal Code Ann. § 12.42(b). However, section 12.42(c) is the specific provision which addresses sentence enhancement for defendants twice convicted of specifically enumerated sex crimes, including sexual assault. *See* Tex. Penal Code Ann. § 12.42(c)(2). Because the unambiguous language of Texas Penal Code section 12.42(c)(2) specifically addresses the circumstances presented in this case, we hold appellant was properly sentenced under section 12.42(c)(2).[7] *See Mancuso,* 919 S.W.2d at 89; *Steadman v. State,* 160 S.W.3d 582, 584–86 (Tex.App.-Waco 2005, pet. ref'd) (holding section 12.42(c)(2) rather than section 12.42(b) applies to punishment for second conviction for sexual assault). Appellant's third issue is overruled.

---

struction of this code." Tex. Penal Code Ann. § 1.05(b).

7. In accordance with the *Boykin* statutory interpretation standard, our analysis does not include legislative history. 818 S.W.2d at 785–86. However, we note that this holding is consistent with the legislature's intent. The 1997 amendment introduced a "Two Strikes measure" to generally provide that a "defendant need only be convicted of a felony once to qualify for life imprisonment in certain cases involving assaultive offenses including

sexual assault." House Comm. on Criminal Jurisprudence Bill Analysis, Tex. S.B. 46, 75th Leg., R.S. (May 22, 1997). The Court of Criminal Appeals has also addressed the legislative history of Penal Code section 12.42 and explained, "Given the laundry-list of offenses in the statute, it is clear that the legislature intended all prior convictions for such crimes to be available to enhance the punishment for a subsequent offense of the same type to life imprisonment." *Griffith,* 116 S.W.3d at 788.

Accordingly, we affirm the judgment and sentence of the trial court.