Opinion issued July 21, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00024-CR

———————————

Louis Contreras III, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 230th District Court

Harris County, Texas



Trial Court Case No. 1199089

 



 

MEMORANDUM OPINION

          A
jury convicted appellant, Louis Contreras III, of the second degree felony
offense of sexual assault of a child.[1]  After the trial court found the allegations
in two enhancement paragraphs to be true, the court assessed appellant’s
punishment at life imprisonment.  In five
issues, appellant contends that:  (1) and
(2) the State failed to present sufficient evidence that appellant
sexually assaulted the complainant, his niece, S.C.; (3) and (4) the trial
court erroneously excluded testimony by appellant’s mother and sister regarding
conversations they had with the complainant, which would have impeached the
complainant’s credibility; and (5) the trial court failed to specify the
particular subsection of Penal Code section 12.42 that it used to sentence
appellant.  The State contends that the
judgment of the trial court erroneously indicates that there were no
enhancements to the indictment and requests that we modify the judgment to
reflect that there were two enhancement paragraphs in this case.

          We
modify the judgment of the trial court and affirm as modified.

Background

          In
April 2008, the complainant, S.C., was fifteen years old and lived with her
mother, her mother’s boyfriend, and her brothers and sisters.  That month, S.C. broke up with her first
boyfriend.  She first met appellant, her
uncle, later in April at her brother’s birthday party.  S.C. testified that she did not see appellant
often after the party, but he eventually moved into her mother’s household in
June.  According to S.C., she and
appellant became friends, and they would often spend time alone together and
visit places such as S.C.’s grandmother’s house, tattoo parlors, and the
park.  S.C. testified that they would
talk about different things, such as what she wanted to do in life, and
appellant would also “share things” with her. 
At some point, their relationship turned romantic, and they would
sometimes kiss and hold hands when they were alone.

          During
the middle of June, a few weeks after appellant and S.C. had started “hanging
out,” S.C. arrived home from a friend’s house around 5:30 in the evening.  Appellant arrived around 7:00, and he was
alone in the apartment with S.C.  Appellant
and S.C. started talking, which then progressed to kissing, touching, and
removing each other’s clothes.  Appellant
and S.C. then engaged in vaginal intercourse. 
S.C. did not say “no” to appellant at any point that evening.  S.C. testified that, although she and
appellant never discussed this incident, they remained close, and she felt like
they were in “somewhat” of a relationship.

          S.C.
testified that, although she never told her mother what happened with
appellant, her mother ultimately found out. 
Her mother sent S.C. to live with her father and kicked appellant out of
the house.  Eventually, S.C.’s mother
told her father about the incident, and her father contacted the
authorities.  S.C. stated that she did
not want anyone to know what had happened because appellant did not force her to
have sex.  She testified that she told
the police and the forensic interviewer at the Children’s Assessment Center (“CAC”)
what happened and stated that she “[was] never forced.”

          S.C.
also testified that she met with an assistant district attorney and recanted
the allegations against appellant.  She
stated that she recanted because her aunt, Michelle Contreras, “was telling
[her] to switch the story around.”  S.C.
later met with the trial prosecutor and told her that her earlier recantation
was false and that the events happened as she had originally reported.

          On
cross-examination, S.C. testified that she never called her grandmother,
Ophelia Contreras, to apologize for getting appellant in trouble or to tell her
that her “mother and father had threatened [S.C.] if [she] didn’t make this
story up about [appellant].”  S.C.
acknowledged that she recanted to an assistant prosecutor, but she denied
recanting to her grandmother, and she stated that “[her] grandmother asked her
daughter Michelle to tell [S.C.] to change the story.”  She testified that she was not under pressure
from her family to withdraw her recantation to the district attorney; rather,
the only pressure “was from Michelle to change the story to where [appellant]
didn’t do it, which he did do it.”  When
asked which “story” was true, S.C. responded “[t]hat he did do it.”

          Daisy
Clark, a caseworker for Children’s Protective Services, testified that after
she was assigned to this case, she went to the house of Beatrice Contreras,
S.C.’s mother, to make contact with the family and begin her
investigation.  Clark stated that when
she initially spoke with S.C. at her mother’s house, she “seemed kind of
fearful” and was not talkative.  When
asked if S.C. made any sexual assault disclosures at that time, Clark responded
“yes and no.”  Clark met with S.C. at the
CAC the next day.  Clark testified that,
at this meeting, S.C. was more talkative and gave more details about what had
happened.  Clark was not an outcry
witness, and she did not testify regarding what S.C. told her during their two
meetings.

          Susan
Odhiambo conducted S.C.’s forensic interview and testified that S.C. made a
disclosure of sexual assault during the interview.  Odhiambo testified that S.C. acted like a
“typical 16-year-old child” during the interview:  she was able to answer the
questions asked, but she was reluctant to talk about what had happened with
appellant.  Odhiambo stated that this
behavior is “not unusual” during forensic interviews, especially with older
children who “know that if they don’t want to talk about it[,] nobody can make
them do it.”  On cross-examination,
Odhiambo testified that S.C. appeared embarrassed and that it sounded like she
was trying to protect someone.

          Houston
Police Department Officer B. Harris, who was assigned to the CAC, testified
that she met with S.C.’s parents and with S.C. after her forensic
interview.  Officer Harris stated that
S.C. made a sexual assault disclosure during their conversation and that her
demeanor was calm, although she appeared to not “want to be there” at the CAC
and was “somewhat uncooperative.”  Officer
Harris stated that S.C. would eventually answer her questions, but that it “was
a slow process in getting the information from [her].”  She agreed with the State that this kind of
behavior during an interview was “pretty common.”  Officer Harris also testified that she
interviewed appellant after he was arrested, and he denied the allegations.

          Appellant
called his mother, Ophelia, and his sister, Michelle, to testify on his behalf.  Ophelia and Michelle both testified that S.C.
had a boyfriend named Arron, that they had seen S.C. with Arron, and that he
was approximately forty years old, the same age as appellant.[2]  Ophelia testified that S.C. called her to discuss
the case.  When defense counsel asked
Ophelia what S.C. had told her, the State objected on hearsay grounds, and the
trial court sustained the objection.  Defense
counsel did not argue the applicability of a particular exception to the
hearsay rule or otherwise explain why Ophelia’s testimony about her
conversation with S.C. was admissible. 
Michelle then testified that she also discussed the case with S.C.  When defense counsel asked Michelle what S.C.
had told her about the case, the State again objected on hearsay grounds, and
the trial court again sustained the objection. 
Defense counsel did not articulate a specific hearsay exception or
explain why Michelle’s testimony was admissible.

          The
jury convicted appellant of the offense of sexual assault of a child.  At the punishment hearing before the trial
court, appellant pleaded “not true” to the allegations in the first enhancement
paragraph—a prior felony conviction
for indecency with a child—and “true”
to the allegations in the second enhancement paragraph—a prior felony conviction for aggravated
robbery.  After a fingerprint expert
testified for the State that the fingerprints on the “pen packet” for the
indecency conviction matched appellant’s fingerprints, the trial court found
the allegations in both enhancement paragraphs to be true.  The trial court assessed appellant’s
punishment at life imprisonment.  This
appeal followed.

Sufficiency of the Evidence

          In
his first and second issues, appellant contends that the State failed to
present legally and factually sufficient evidence that he sexually assaulted S.C.[3]

A.  
Standard of Review

When reviewing the sufficiency of
the evidence, we view the evidence in the light most favorable to the verdict
to determine whether any rational fact finder could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Brooks v. State, 323 S.W.3d 893, 912
(Tex. Crim. App. 2010).  The jurors are
the exclusive judges of the facts, the credibility of the witnesses, and the
weight to be given to the testimony.  Brooks, 323 S.W.3d at 899; Bartlett v. State, 270 S.W.3d 147, 150
(Tex. Crim. App. 2008).  A jury may
accept one version of the facts and reject another, and it may reject any part
of a witness’s testimony.  Margraves v. State, 34 S.W.3d 912, 919
(Tex. Crim. App. 2000), overruled on
other grounds, Laster v. State,
275 S.W.3d 512 (Tex. Crim. App. 2009). 
We may not re-evaluate the weight and credibility of the evidence or
substitute our judgment for that of the fact-finder.  Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We resolve any inconsistencies in the
evidence in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex.
Crim. App. 2000).

B.  
Sexual Assault of a Child

To prove that appellant committed
sexual assault of a child, the State was required to establish that appellant
intentionally or knowingly caused the penetration of the sexual organ of S.C.,
a child under the age of seventeen and who was not appellant’s spouse, with his
sexual organ.  Tex. Penal Code Ann. § 22.011(a)(2)(A) (Vernon Supp.
2010).

A conviction for the offense of
sexual assault of a child is “supportable on the uncorroborated testimony of
the victim of the sexual offense . . . .”  Tex.
Code Crim. Proc. Ann. art. 38.07(a) (Vernon 2005); Lee v. State, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.]
2004), aff’d, 206 S.W.3d 620 (Tex.
Crim. App. 2006) (“The testimony of a child victim alone is sufficient to
support a conviction for indecency with a child.”); Navarro v. State, 241 S.W.3d 77, 81 (Tex. App.—Houston [1st Dist.]
2007, pet. ref’d) (holding same).  The
State has no burden to produce any corroborating or physical evidence.  Benton
v. State, 237 S.W.3d 400, 404 (Tex. App.—Waco 2007, pet. ref’d); see also Lee, 176 S.W.3d at 458 (“The
lack of physical or forensic evidence is a factor for the jury to consider in
weighing the evidence.”).

Here, S.C. testified that on one
evening in June 2008, when she was fifteen years old, she and appellant, who
had become friends and had “somewhat” of a romantic relationship, were alone in
her mother’s apartment.  They started
talking, which progressed to kissing, touching, and removing each other’s
clothes.  S.C. testified that, ultimately,
she and appellant engaged in consensual vaginal intercourse.  Daisy Clark, Officer Harris, and Susan
Odhiambo, none of whom were outcry witnesses, all testified that during their
discussions with S.C., she made a disclosure regarding sexual contact with
appellant.  S.C.’s testimony alone is
sufficient to support the jury’s verdict convicting appellant of sexual assault
of a child.  See Lee, 176 S.W.3d at 458; Navarro,
241 S.W.3d at 81; see also Tex. Code Crim. Proc. Ann. art.
38.07(a) (providing that uncorroborated testimony of child victim alone is
sufficient to support conviction for sexual assault).

Appellant concedes that S.C.’s
uncorroborated testimony may be sufficient to support the verdict, but he
contends that a “rational trier of fact would have found that the complainant’s
testimony lacked credibility because she recanted to an assistant district
attorney and never gave a good reason for recanting.”  First, we note that the jurors are the sole
judges of the facts, the credibility of the witnesses, and the weight to give
the witnesses’ testimony.  See Brooks, 323 S.W.3d at 899; Bartlett, 270 S.W.3d at 150.  In a sufficiency of evidence review, we are
not entitled to re-evaluate the weight and credibility of the witnesses and substitute
our judgment for that of the fact finder. 
See Williams, 235 S.W.3d at
750; see also Lee, 176 S.W.3d at 458
(“[T]he jury was free to believe all or any part of the testimony of the
State’s witnesses, and disbelieve all or any part of the witness testimony.”).

We further note that a
complainant’s recantation of earlier outcry testimony does not destroy the
probative value of that testimony.  Chambers v. State, 805 S.W.2d 459, 461
(Tex. Crim. App. 1991).  At the trial in Chambers, the complainant recanted her
earlier videotaped outcry statement in which she had told the investigating
officer that Chambers had been molesting her. 
Id. at 459–60.  The Court of Criminal Appeals noted that the
jury observed the complainant’s demeanor while she testified, and it was
entitled to reconcile conflicts in her testimony and to disbelieve her
recantation.  Id. at 461; see also Saldaña v. State, 287 S.W.3d 43, 60 (Tex.
App.—Corpus Christi 2008, pet. ref’d) (“[I]t is up to the fact finder to
determine whether to believe the original statement or the recantation.  A fact finder is fully entitled to disbelieve
a witness’s recantation.”); Jackson v.
State, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet.
ref’d) (“[A] criminal conviction, which requires proof beyond a reasonable
doubt, may rest on hearsay despite the lack of the complainant’s testimony or
even the complainant’s recantation.”).

Here, S.C. acknowledged that, at
one point, she had recanted the allegations against appellant while speaking
with an assistant district attorney. 
S.C. testified that she recanted due to pressure from her aunt,
Michelle, who told S.C. to “switch the story around.”  S.C. also testified that her grandmother,
Ophelia, asked Michelle to “tell [S.C.] to change her story.”  On cross-examination, S.C. stated that her
family did not pressure her to withdraw the recantation that she made to the
district attorney; rather, the only familial pressure came from Michelle to
make the initial recantation.  S.C.
repeatedly testified that the “true story” was that appellant committed the
alleged acts.

It is the role of the fact finder,
who weighs the evidence and evaluates the credibility of the witnesses, to
determine whether to believe a witness’s testimony or the recantation, and “[a]
fact finder is fully entitled to disbelieve a witness’s recantation.”  Saldaña, 287 S.W.3d at 60; see also Maldonado v. State, 887 S.W.2d
508, 509 (Tex. App.—San Antonio 1994, no pet.) (“Just because the complaining
witness recants incriminating testimony does not mean the evidence is
insufficient.”).  In convicting appellant
of sexual assault, the jury made a credibility determination to believe S.C.’s
live testimony instead of her earlier recantation to an assistant district
attorney.  We afford almost complete
deference to this determination.  See Lancon v. State, 253 S.W.3d 699, 705
(Tex. Crim. App. 2008); see also Lee,
176 S.W.3d at 458 (“A court of appeals must show deference to such a jury
finding.”).

Appellant further contends that the
evidence is insufficient to support the verdict because (1) it is “simply hard
to believe” that the sexual contact only happened once if appellant was
“grooming” S.C. and was a “sexual predator”; (2) appellant and S.C.’s
relationship remained the same after the incident; (3) S.C. was “clearly
untruthful” regarding her relationship with Arron; and (4) there was no
evidence of S.C. being threatened or coerced into “switch[ing] up her story.”  All of these arguments attack S.C.’s
credibility.

As the State points out, the
indictment only alleged one instance of sexual contact between appellant and
S.C.; therefore, the State was only required to prove one instance of sexual
contact between appellant and S.C. 
Furthermore, appellant cites no authority to support his argument that a
lack of testimony regarding multiple and repeated instances of sexual contact
makes it less likely and “hard to believe” that appellant committed the charged
offense.

Appellant argues that S.C. was “clearly
untruthful” about her relationship with Arron because both Ophelia and Michelle
testified that Arron was forty years old and was S.C.’s boyfriend.  S.C. testified, on the other hand, that she
knew an Arron, but she believed that he was twenty-three years old, and she
unequivocally stated that she was not dating anyone during the time period of
these events and that Arron was not her boyfriend.  The jurors are the sole judges of the
credibility of the witnesses and the weight to be given to their testimony, and
they are free to accept one version of the facts and disbelieve another.  See
Margraves, 34 S.W.3d at 919.  The
jury was therefore entitled to believe S.C.’s testimony that she was not in a
relationship with Arron and disbelieve Ophelia’s and Michelle’s testimony to
the contrary.  See Williams, 235 S.W.3d at 750 (holding that we may not
re-evaluate weight and credibility of evidence or substitute our judgment for
that of fact-finder); Curry, 30
S.W.3d at 406 (holding that we resolve inconsistencies in evidence in favor of
the verdict).

Appellant also contends that
“[t]here is absolutely no evidence of a threat, or any kind of coercion being
placed against the complainant to switch up her story.”[4]  S.C. testified that Michelle, on direction
from Ophelia, talked to S.C. and asked her to recant the allegations against
appellant.  As a result, S.C. recanted to
an assistant district attorney, but later told the prosecuting district
attorney that her recantation was false and her initial allegations were true.  S.C. clearly testified that she was not under
pressure from any other family member to recant her recantation.  Again, the jury was entitled to believe
S.C.’s testimony, and we afford almost complete deference to this
determination.  See Lancon, 253 S.W.3d at 705.

Thus, viewing the evidence in the
light most favorable to the verdict, we hold that the evidence was sufficient
for a rational fact finder to have found beyond a reasonable doubt that
appellant sexually assaulted S.C.

We overrule appellant’s first and
second issues.

Exclusion of Evidence

          In
his third issue, appellant contends that the trial court erred in excluding the
substance of S.C.’s conversation with Ophelia as hearsay because Ophelia’s
testimony was admissible to impeach S.C.’s credibility.  In his fourth issue, appellant contends that
the trial court erred in excluding the substance of S.C.’s conversation with
Michelle for the same reason.  We
consider these issues together.

          We
review a trial court’s decision to exclude evidence for an abuse of
discretion.  Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).  A trial court abuses its discretion only if
its decision is “so clearly wrong as to lie outside the zone within which
reasonable people might disagree.”  Taylor v. State, 268 S.W.3d 571, 579
(Tex. Crim. App. 2008); Roberts v. State,
29 S.W.3d 596, 600 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d).  If the trial court’s decision is reasonably
supported by the record and correct on any theory of law applicable to the case,
we will uphold the decision.  De La Paz v. State, 279 S.W.3d 336, 344
(Tex. Crim. App. 2009); State v. Ross,
32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000). 
We review the trial court’s ruling in light of the evidence before the
court at the time it made the ruling.  Willover v. State, 70 S.W.3d 841, 845
(Tex. Crim. App. 2002) (citing Weatherred
v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)).

          Hearsay
is a statement, other than one made by the declarant while testifying at the
trial, offered in evidence to prove the truth of the matter asserted.  Tex.
R. Evid. 801(d).  As a general
rule, hearsay is inadmissible “unless it falls within one of the many
exceptions.”  Willover, 70 S.W.3d at 845; Tex.
R. Evid. 802.  To admit evidence
pursuant to a hearsay exception, “the proponent of the evidence must specify
which exception he is relying upon.”  Willover, 70 S.W.3d at 845; see also Reyna v. State, 168 S.W.3d 173,
177 (Tex. Crim. App. 2005) (“So it is not enough to tell the judge that
evidence is admissible.  The proponent,
if he is the losing party on appeal, must have told the judge why the evidence
was admissible.”).  It is the duty of the
appellant, not the trial court, to articulate the applicable hearsay exception
or specify how the challenged evidence is not hearsay.  Willover,
70 S.W.3d at 845–46.

          To
preserve error for appellate review, the party complaining on appeal “must, at
the earliest opportunity, have done everything necessary to bring to the
judge’s attention the evidence rule or statute in question and its precise and
proper application to the evidence in question.”  Martinez
v. State, 91 S.W.3d 331, 335–36 (Tex. Crim. App. 2002).  The issue is “whether the complaining party
on appeal brought to the trial court’s attention the very complaint the party
is now making on appeal.”  Reyna, 168 S.W.3d at 177 (quoting Martinez, 91 S.W.3d at 336); see also Pena v. State, 285 S.W.3d 459,
464 (Tex. Crim. App. 2009) (“To avoid forfeiting a complaint on appeal, the party
must ‘let the trial judge know what he wants, why he thinks he is entitled to
it, and to do so clearly enough for the judge to understand him at a time when
the judge is in the proper position to do something about it.”) (quoting Lankston v. State, 827 S.W.2d 907,
908–09 (Tex. Crim. App. 1992)).

          Ophelia
testified as follows:

[Defense
counsel]:          Did you ever discuss—did
[S.C.] ever call you to discuss this case with you?

 

[Ophelia]:             Yes, sir.

 

[Defense counsel]:          What did she tell you?

 

[The State]:          Objection, Your Honor, hearsay.

 

The Court:            Sustained.

 

Defense counsel then moved on to a different line of
questioning.  Counsel did not articulate
a specific hearsay exception or otherwise explain why Ophelia’s testimony
regarding her conversation with S.C. was admissible.  Likewise, defense counsel asked Michelle
about her conversation with S.C. and Michelle testified as follows:

[Defense counsel]:          Did you ever discuss this case with
[S.C.]?

 

[Michelle]:            Yes, sir.

 

[Defense counsel]:          What did [S.C.] tell you about this
case?

 

[Michelle]:            [S.C.], Beatrice—

 

[The State]:          Your Honor, hearsay.

 

The Court:            Sustained.

 

Once again, defense counsel did not state a specific
hearsay exception or explain to the trial court why Michelle’s testimony was admissible.

          On
appeal, appellant contends that Ophelia’s and Michelle’s testimony regarding
their conversations with S.C. was admissible under Texas Rule of Evidence 806,
which allows a party to attack the credibility of a declarant after a hearsay
statement has been admitted into evidence.[5]  See Tex. R. Evid. 806.  Appellant, however, failed to bring this
rationale for the admission of Ophelia’s and Michelle’s testimony to the
attention of the trial court at the time he offered the testimony.  See
Reyna, 168 S.W.3d at 177 (holding
that, to preserve error when trial court excludes evidence, proponent must have
told trial court “why the evidence was admissible”); Willover, 70 S.W.3d at 845–46 (holding that appellant has duty to
articulate particular hearsay exception and specify how proffered evidence is
not hearsay); see also Pena, 285 S.W.3d at 464 (requiring party
to “let the trial judge know what he wants, why he thinks he is entitled to it,
and to do so clearly enough for the judge to understand him at a time when the
judge is in the proper position to do something about it”).  Because appellant made no attempt to specify
a particular hearsay exception or otherwise inform the trial court of why
Ophelia’s and Michelle’s testimony was admissible, we hold that appellant
failed to preserve for appellate review his contention that the trial court
erroneously excluded Ophelia’s and Michelle’s testimony regarding their
conversations with S.C.

          We
overrule appellant’s third and fourth issues.

Failure to Specify Particular Penal Code Subsection Used for
Sentencing

          In
his fifth issue, appellant contends that the trial court erred in not
specifying the particular subsection of Penal Code section 12.42 under which it
sentenced appellant to life imprisonment because he met the requirements of two
different provisions of the statutory sentencing enhancement scheme and he “cannot
properly raise potential points of error until it is determined which
sentenc[ing] theory the Court made the [basis] of [its] judgment.”

          Penal
Code section 12.42(d) provides that

Except as provided by Subsection (c)(2), if it is shown on the trial of a felony
offense . . . that the defendant has previously been
finally convicted of two felony offenses, and the second previous felony
conviction is for an offense that occurred subsequent to the first previous
conviction having become final, on conviction he shall be punished by
imprisonment . . . for life, or for any term of not more
than 99 years or less than 25 years.

 

See Tex. Penal Code Ann. § 12.42(d)
(Vernon Supp. 2010) (emphasis added). 
Section 12.42(c)(2)(A)–(B) provides that “a defendant shall be punished
by imprisonment in the Texas Department of Criminal Justice for life” if the
defendant is convicted of sexual assault and the defendant has been previously
convicted of indecency with a child.  See id. § 12.42(c)(2)(A)–(B).  When interpreting a statute, “[w]e are
required to presume . . . that all words within a statute
are intended to be effective, and the language therein will create a just and
reasonable result.”  Jones v. State, 225 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.]
2007, no pet.) (citing Tex. Gov’t Code
Ann. § 311.021 (Vernon 2005)); see
also Fielding v. State, 266 S.W.3d 627, 633 (Tex. App.—El Paso 2008, pet.
ref’d) (“In determining [legislative] intent or purpose, the reviewing court
should focus upon the literal text of the statute and attempt to discern its
fair and objective meaning.”).

          The
plain language of section 12.42(d), which begins “[e]xcept as provided by Subsection
(c)(2),” provides that section 12.42(d), if applicable, applies to the extent
that section 12.42(c)(2) does not.  See Jones, 225 S.W.3d at 781 (reaching
same result with regard to section 12.42(c)(1)—the “general enhancement provision for a first-degree felony”—and section 12.42(c)(2)).  Section 12.42(c)(2) “is the specific
provision which addresses sentence enhancement for defendants twice convicted
of specifically enumerated sex crimes, including sexual assault.”  Id.
at 782.  This subsection states that if
the defendant is convicted of an offense such as sexual assault and he has been
previously convicted of another sex-crimes offense, such as indecency with a
child, the defendant “shall be
punished by imprisonment in the Texas Department of Criminal Justice for
life . . . .”  Tex. Penal Code Ann. § 12.42(c)(2)
(emphasis added).  If the defendant meets
the requirements of section 12.42(c)(2), the trial court has no discretion and
is required to sentence the defendant to life imprisonment.  See Steadman
v. State, 160 S.W.3d 582, 584 (Tex. App.—Waco 2005, pet. ref’d) (“[B]ecause
Steadman was convicted of sexual assault and has a prior conviction for the
same offense, the mandatory life provision of section 12.42(c)(2) applies.”); Moore v. State, 54 S.W.3d 529, 540 (Tex.
App.—Fort Worth 2001, pet. ref’d) (“As required by section 12.42(c)(2), the
trial court assessed a life sentence.”).

          Here,
appellant concedes that he satisfied the requirements for sentence enhancement
under both subsection 12.42(c)(2) and subsection 12.42(d).  Because appellant met the requirements of
section 12.42(c)(2)—the jury
convicted him of sexual assault in this case and the trial court found that he
had previously been convicted of indecency with a child—the trial court was required to assess a life
sentence.  See Jones, 225 S.W.3d at 782 (“Because the unambiguous language of
Texas Penal Code section 12.42(c)(2) specifically addresses the circumstances
presented in this case, we hold appellant was properly sentenced under section
12.42(c)(2).”); Steadman, 160 S.W.3d
at 584–86; Moore, 54 S.W.3d at
540.  Because the trial court was
required to sentence appellant to life imprisonment pursuant to section
12.42(c)(2), it could not sentence appellant under section 12.42(d), even though
appellant also met the statutory requirements of that particular
subsection.  See Tex. Penal Code Ann.
§ 12.42(d) (“Except as provided by
Subsection (c)(2), if it is shown on the trial of a felony
offense . . . that the defendant has previously been finally
convicted of two felony offenses . . . on conviction he
shall be punished by imprisonment . . . for life, or for
any term of not more than 99 years or less than 25 years.”) (emphasis added).  Thus, because the trial court could
permissibly sentence appellant only under section 12.42(c)(2), it was not
required to state the particular Penal Code section that it used to assess
appellant’s sentence.

          We
therefore hold that appellant has failed to demonstrate that the trial court
committed reversible error by not stating the specific statutory provision used
to sentence him to life imprisonment.

          We
overrule appellant’s fifth issue.

Modification of Judgment of Trial Court

          The
State contends that the trial court’s judgment erroneously indicates that there
were no enhancements to the indictment and requests that we modify the judgment
to reflect that there were two enhancement paragraphs in this case.

          An
appellate court has the authority to reform a judgment to make the record speak
the truth when the matter has been called to its attention by any source.  French
v. State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (holding that
appellate court could reform judgment to reflect jury’s affirmative deadly
weapon finding and adopting reasoning in Asberry
v. State, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref’d) (“The
authority of an appellate court to reform incorrect judgments is not dependent
upon the request of any party, nor does it turn on the question of whether a
party has or has not objected in the trial court.”)); see also Rhoten v. State, 299 S.W.3d 349, 356 (Tex. App.—Texarkana
2009, no pet.) (reforming judgment to correctly reflect appellant’s plea).  “The Texas Rules of Appellate Procedure also
provide direct authority for this Court to modify the trial court’s
judgment.”  Rhoten, 299 S.W.3d at 356 (citing Tex.
R. App. P. 43.2(b) (providing that court of appeals may modify trial
court’s judgment and affirm as modified)).

          Here,
the record clearly reflects that the indictment contained two enhancement
paragraphs—one for a previous
conviction of indecency with a child and one for a previous conviction of
aggravated robbery.  The record further
reflects that, at the punishment hearing, appellant pleaded “not true” to the
allegations in the first enhancement paragraph—prior conviction of indecency with a child—and pleaded “true” to the allegations in the second enhancement paragraph—prior conviction of aggravated robbery.  After hearing testimony from the State’s
fingerprint expert, the trial court expressly found the allegations in both
enhancement paragraphs to be true.

          We
therefore conclude that the judgment should be modified to reflect that
appellant pleaded “not true” to the first enhancement paragraph and “true” to
the second enhancement paragraph and that the trial court found the allegations
in both enhancement paragraphs to be true.

Conclusion

          We
modify the judgment of the trial court to reflect that appellant pleaded “not
true” to the allegations in the first enhancement paragraph and “true” to the
allegations in the second enhancement paragraph.  We further modify the judgment to reflect
that the trial court found the allegations in both enhancement paragraphs to be
true.  We affirm the judgment of the
trial court as modified.

 

 

                                                                   Evelyn V.
Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Justice
Sharp, concurring in the judgment only.

Do
not publish.   Tex. R. App. P. 47.2(b).

 











[1]
          See Tex. Penal Code Ann.
§ 22.011(a)(2)(A) (Vernon Supp. 2010).





[2]
          On cross-examination, S.C. testified that she
did not have a boyfriend during the time period of these events.  She agreed that she knew a man named Arron, but
she stated that she believed that he was twenty-three years old and not
forty.  She denied being in a romantic
relationship with Arron.





[3]
          In Brooks v. State, the Court of Criminal Appeals overruled Clewis v. State and its progeny and held
that evidence is to be reviewed solely under the sufficiency standard described
in Jackson v. Virginia.  323 S.W.3d 893, 912 (Tex. Crim. App. 2010)
(“[W]e decide that the Jackson v.
Virginia standard is the only standard that a reviewing court should apply
in determining whether the evidence is sufficient to support each
element . . . beyond a reasonable doubt.”); Ervin v. State, 331 S.W.3d 49, 52–54
(Tex. App.—Houston [1st Dist.] 2010, pet. ref’d) (construing majority holding
in Brooks).  We therefore construe appellant’s contention
as solely challenging the sufficiency of the evidence, as provided under Brooks.





[4]
          Appellant additionally argues
that “[a] request by an Aunt to switch her story also flies in the face of
reality.”  The State called Dr. Lawrence
Thompson, the Director of Therapy and Psychological Services at the CAC, to
testify generally regarding such topics as delayed outcry, grooming, and
recantations.  When asked why child
sexual abuse victims usually recant, Dr. Thompson stated:

 

Literally, the family unit can change. 
Maybe the perpetrator was in the family and now they’re no longer in the
family or different family members feel negatively or positively or don’t
believe this child.  There can be a lot
of pressure on that child from their close family members and more extended
family members and that pressure can contribute to [the family members] saying
[to the complainant]:  Look, say this
didn’t happen so things can get back to the way they used to be.





[5]
          Appellant additionally contends
that by excluding Ophelia’s and Michelle’s testimony, the trial court denied
appellant the ability to confront and cross-examine S.C., the witness against
him.  Appellant makes this argument for
the first time on appeal.  We hold that
because appellant did not raise this contention at the time the trial court
excluded Ophelia’s and Michelle’s testimony, he has not preserved this
complaint for appellate review.  See Campos v. State, 186 S.W.3d 93, 98
(Tex. App.—Houston [1st Dist.] 2005, no pet.) (“The right of confrontation is
vital to an ordered criminal justice system, but it is nonetheless a trial
right, and a defendant waives his right to confront witnesses if he does not
object at trial.”); see also Reyna v.
State, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (“Because Reyna ‘did not
clearly articulate’ that the Confrontation Clause demanded admission of the
evidence, the trial judge ‘never had the opportunity to rule upon’ this
rationale.  As the losing party, Reyna
must ‘suffer on appeal the consequences of his insufficiently specific
offer.’”).