Opinion Issued May 15, 2008







 

 









In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-06-00521-CR

____________


HERNAN ARQUIMIDES RAMOS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from 337th District Court

Harris County, Texas

Trial Court Cause No. 1025531






O P I N I O N


 A jury convicted appellant, Hernan Arquimides Ramos, of the felony offense
of forgery of a government instrument. See Tex. Pen. Code Ann. § 32.21(e)(2);
(e)(3) (Vernon Supp. 2007). The trial court assessed appellant's punishment at five
years' imprisonment. Appellant appealed. Appellant was subsequently deported
from the United States on November 16, 2006. 

 In five issues, appellant contends the trial court committed charging error by
(1) failing to define the term "instrument," (2) submitting an incorrect definition of
"writing," (3) instructing on two unalleged theories of liability, and (4) failing to
instruct on the lesser-included offense of misdemeanor forgery. In two points of
error, appellant also challenges the legal sufficiency of the evidence. We affirm.

I. Factual Background

 After receiving an anonymous tip that appellant was involved in making illegal
documents, an officer with the Houston Police Department conducted a sting
operation in which a confidential informant (CI) contacted appellant by telephone and
arranged to purchase counterfeit social security and resident alien cards. Appellant
and the CI arranged to meet in a parking lot. As part of the "sting," the CI wore a
recording device and was given a marked $100 bill to purchase the documents from
appellant.

 During the course of the meeting, appellant and the CI had a short discussion,
after which they left the parking lot and drove to a photography business. There, the
CI's photograph was taken for the resident alien card. Appellant told the CI the
documents would be ready in about an hour and left with the CI's photograph.

 Shortly thereafter, the CI and appellant arranged to meet again in another
parking lot. Upon appellant's arrival, the CI approached appellant's vehicle. 
Appellant handed the CI a small envelope containing the illegal documents; the CI
paid appellant for the documents--a social security card and a resident alien card in
the name of "Manuel Perez." Appellant instructed the CI to use the documents for
work only.

 After the CI gave an "arrest signal," officers arrested appellant. The $100 bill
in appellant's wallet matched the prerecorded serial number of the $100 bill the CI
was given to purchase the documents.

 The officer who coordinated the sting testified that, in her experience, the
documents supplied by appellant were to be used for obtaining professional
employment. She further testified that only the United States Social Security
Administration is authorized to issue social security cards.

II. Discussion 

A. Legal Sufficiency: "Government Instrument"


 In his first issue, appellant asserts that the evidence is legally insufficient to
prove he possessed a "government instrument" as alleged in the indictment, which
read in relevant part:


 Hernan Arquimides Ramos, hereafter styled the Defendant, heretofore
on or about April 2, 2005, did then and there unlawfully, and with intent
to defraud and harm another, forge a writing, namely a government
instrument issued by the United States, attached hereto as Exhibit A,
which purported to be the act of another who did not authorize that act,
by possessing it with intent to utter it, and while knowing it was
forged[.] 



 Attached to the indictment as Exhibit "A" was a copy of the forged social
security card in the name of "Manuel Perez." 

 Section 32.21 of the Texas Penal Code defines the offense of forgery as
follows:

 

 (a) For purposes of this section:

 (1) "Forge" means:

 (A) to alter, make, complete, execute, or authenticate any
writing so that it purports:

 (i) to be the act of another who
did not authorize that act;

 (ii) to have been executed at a time or place or
in a numbered sequence other than was in fact
the case; or 

 (iii) to be a copy of an original when no such original
existed;

 (B) to issue, transfer, register the transfer of, pass, publish, or
otherwise utter a writing that is forged within the meaning of
Paragraph (A); or

 (C) to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B).

 (2) "Writing" includes:

 (A) printing or any other method of recording information;

 (B) money, coins, tokens, stamps, seals, credit cards, badges, and
trademarks; and

 (C) symbols of value, right, privilege, or identification.

 (b) A person commits an offense if he forges a writing with intent to defraud or harm another.

 (c) Except as provided in Subsections (d) and (e), an offense under this section is a Class A misdemeanor.

 (d) An offense under this section is a state jail felony if the writing is or purports to be a will, codicil, deed, deed of trust, mortgage, security
instrument, security agreement, credit card, check or similar sight order for
payment of money, contract, release, or other commercial instrument.

 (e) An offense under this section is a felony of the third degree if the writing
is or purports to be:

 (1) part of an issue of money, securities, postage or revenue stamps;

 (2) a government record listed in Section 37.01(2)(C); (1) or

 (3) other instruments issued by a state or national government or by a
subdivision of either, or part of an issue of stock, bonds, or other
instruments representing interests in or claims against another person.


Tex. Pen. Code Ann. § 32.21. Thus, to prove misdemeanor forgery, the State must
show that the accused "with the intent to defraud or harm another . . . possess[ed] a
writing [purporting] to be the act of another, and the other person did not authorize
the act." See id. § 32.21(a)(1)(A)(i); (a)(1)(C); (b); (c). To prove a felony of the third
degree the State must further show the writing is or purports to be: (1) "part of an
issue of money, securities, postage, or revenue stamps"; (2) "a government record .
. . ."; or (3) "other instruments issued by a state or national government or by a
subdivision of either . . . ." See id. § 32.21(e)(1); (e)(2); (e)(3).

 The indictment alleged that appellant unlawfully, and with intent to defraud
and harm another, forged a writing, namely a government instrument issued by the
United States which purported to be the act of another who did not authorize that act,
by possessing it with intent to utter it, and while knowing it was forged. Appellant
claims the evidence is legally insufficient to prove beyond a reasonable doubt he
possessed a "government instrument" as alleged in the indictment because a social
security card is not an "instrument." (2) In appellant's view, the term "instrument" is a
narrow term not meant to be given a broad meaning. Additionally, appellant urges
that the structure of the forgery statute indicates the term "government instrument"
was not meant to be synonymous with or to be used interchangeably with the term
"government record." In other words, appellant asserts that if the term "instrument"
were intended to have a broad meaning, there would be no purpose in separately
enumerating "government records" in subsection (e)(2) of the statute. 


 1. History of the Forgery Statute


 In 1973, the entire Texas Penal Code was rewritten. See Acts 1973, 63rd Leg.,
p. 883, ch. 399, § 1, eff. Jan. 1, 1974. At that time, the Legislature set forth the
pertinent section of the forgery statute as follows: "an offense under this section is
a felony of the second degree if the writing is or purports to be part of an issue of
money, securities, postage or revenue stamps, or other instruments issued by a state
or national government or by a subdivision of either, or part of an issue of stock,
bonds, or other instruments representing interests in or claims against another
person." Id. (emphasis added).

 In 1991, the forgery statute was amended to provide a felony penalty for the
alteration of "governmental records." Senate Comm. on Transportation, Bill
Analysis, Tex. S.B. 589, 72nd Leg., R.S. (1991). The Legislature defined
"governmental record" to mean: "anything belonging to, received by, or kept by
government for information; anything required by law to be kept by others for
information of government, or a license, certificate, permit, seal, title, or similar
document issued by government." Id. At the time of the amendment, the language
concerning the felony penalty for forgery of "other instruments issued by a state or
national government" remained unchanged. Id. 

 Currently, the Texas Penal Code enumerates various instruments that constitute
"government records" for the purposes of Chapter 32, but does not articulate which
documents constitute "other instruments issued by a state or national government." 
Tex. Pen. Code Ann. § 32.21(e)(3). Furthermore, nowhere in the Penal Code is a
United States Social Security card specifically defined as a "government record" or
"instrument[] issued by a state or national government." (3)

 2. Standard of Review


 When examining the legal sufficiency of the evidence, appellate courts view
the evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005)
(citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-2789
(1979)). This standard concedes to appellate courts only a limited role. The inquiry
does not require a reviewing court to ask itself whether it believes that the evidence
at the trial established guilt beyond a reasonable doubt. Jackson, 443 U.S. at 318-19,
99 S. Ct. at 2789. In this regard, the court is not to position itself as a thirteenth juror
in assessing the evidence. Narvaiz v. State, 840 S.W.2d 415, 423 (Tex. Crim. App.
1992) (stressing that appellate judges are not factfinders.); Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988). Rather, the court is to position itself as a
final due process safeguard, ensuring only the rationality of the factfinder. Moreno,
755 S.W.2d at 867.

 When determining the sufficiency of the evidence to support a jury verdict,
reviewing courts must not employ definitions of relevant statutory words which are
different or more restrictive than the jurors themselves were legally entitled to use.
Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). Instead, when read
in context, words used in their ordinary sense by the Legislature should be open to
the broadest possible understanding to which they are reasonably susceptible.
Bingham v. State, 915 S.W.2d 9, 10 (Tex. Crim. App. 1994); Vernon, 841 S.W.3d
at 409.

 3. Analysis


 As noted, the term "instrument" is not defined in the Texas Penal Code. Both
appellant and the State offer several definitions of the word "instrument" from
various resources. (4) Appellant urges that the definitions upon which he relies are
narrow and would not encompass a United States social security card. However, the
term "instrument" should not be read in a vacuum, but rather it should be read within
the context of the statute in which it appears. See Bingham, 915 S.W.2d at 10
(holding words used in their ordinary sense should be read in context). The pertinent
portion of section 32.21 reads:


 (e) An offense under this section is a felony of the third degree if the writing
is or purports to be:


 (1) part of an issue of money, securities, postage or
revenue stamps;


 (2) a government record listed in Section 37.01(2)(C); or


 (3) other instruments issued by a state or national
government or by a subdivision of either, or part of an
issue of stock, bonds, or other instruments representing
interests in or claims against another person.


 Tex. Pen. Code Ann. §32.21(e)(1)-(3). The indictment alleged that appellant forged
a writing, specifically a social security card, that was attached to the indictment as
"Exhibit A," with the intent to defraud and harm another. The indictment referred
to "Exhibit A" as a "government instrument." 

 The Legislature did not define the statutory term "instrument" or the statutory
phrase "other instruments issued by a state or national government," nor did it need
to. The word "instrument," in the context in which it appears, is a word in common
use. Its meaning is clear and well understood by the ordinary person. It does not
generally have such an involved, complicated or special meaning to require a
definition. Jurors may freely read the statutory language to have any meaning which
is acceptable in common speech. See Vernon, 841 S.W.2d at 409; see also Tex.
Code Crim. Proc. Ann. art. 3.01 (Vernon 2005) (providing that "all words, phrases
and terms used in this Code are to be taken and understood in their usual acceptation
in common language, except where specially defined."); Joubert v. State, 124
S.W.2d 368, 369 (Tex. Crim. App. 1938) (stating that where terms used are simple
words, and are used in their ordinary meaning, jurors are presumed to know such
common meaning.)

 The evidence at trial showed that a social security card is an "instrument[]
issued by . . . a national government," namely an instrument issued by the United
States. Specifically, the officer who coordinated the sting testified that, based on
her experience, the social security card was "a counterfeit card, was a forged card." 
Another officer involved in the sting testified the social security administration is the
agency responsible for issuing social security cards and is part of the United States
government. Finally, the CI testified that his name was not "Manuel Perez," the
name present on the social security card, and that the number on the social security
card was not his. Moreover, the CI testified that when he first spoke with appellant,
he made it clear he wanted a false document. 

 Although not the exact words of the statute, the language used in the
indictment, "government instrument," conveyed the same meaning as the statutory
words. Stated differently, the indictment alleged facts that if proved would establish
the forgery of an "instrument . . . issued by the state or national government or a
subdivision thereof." See Maedgen v. State, 104 S.W.2d 518, 520 (1937) (holding
if words not in statute are substituted for those which are, indictment is sufficient if
words so substituted are equivalent to those used in the statute); see also Adegbenro
v. State, 36 S.W.3d 658, 660 (Tex. App.--Houston [1st Dist.] 2001, pet. ref'd)
(holding language used in indictment for commercial bribery conveyed same
meaning as statutory words, despite difference in the language.) Therefore, the
jurors could rationally have found beyond a reasonable doubt that a social security
card is a "government instrument," and that the evidence supported a felony forgery
conviction.

 Additionally, we do not agree with appellant that the presence of the term
"government record" and the designation of certain records that constitute
"government records" means the Legislature intended those records to be an
exclusive representation of the types of government documents falling within the
purview of the felony forgery statute. When interpreting a statute, we presume the
Legislature intended the entire statute to be effective. Jones v. State, 225 S.W.3d
772, 782 (Tex. App.--Houston [14th Dist.] 2007, no pet); Tex. Gov't Code Ann.
§311.021 (Vernon 2005). In adhering to this rule, we show our respect for the
Legislature and recognize that if it enacted into law something different from what
it intended, it would amend the statute to conform to its intent. State v. Vasilas, 187
S.W.3d 486, 489 (Tex. Crim. App. 2006) (citing Getts v. State, 155 S.W.3d 153, 158
(Tex. Crim. App. 2005)). 

 As previously noted, at the time section 32.21 was amended by the Legislature
to add subsection (e)(2) relating to "government record[s]," the phrase "other
instruments issued by a state or national government or by a subdivision of either"
was already in place. Thus, from the statute's inception the Legislature intended to
punish forgeries of government instruments more severely than forgeries of
instruments that do not purport to be issued by the government. Reading the statute
as a whole and viewing the legislative history, we conclude that subsection (e)(2)
does not limit the types of documents that may be considered a "government
instrument" for purposes of the forgery statute. The statute provides a felony penalty
for the forgery of several broad categories of government instruments: (1) part of an
issue of money, securities, postage or revenue stamps, (2) government records, and
(3) other instruments issued by a state or national government . . . . Tex Penal
Code Ann. § 32.21(e)(1)-(3) (emphasis added). The Legislature's use of the phrase
"other instruments" implies that the items listed in subsection (1) and (2) are
instruments as well. Therefore, a social security card may properly be a "government
record" or "government instrument" for the purposes of the statute.

 Viewing the evidence in a light most favorable to the verdict, a rational jury
could have found a social security card is a "government instrument" as alleged in
the indictment, specifically that it is an "instrument issued by a state or national
government." Therefore, the evidence is legally sufficient to sustain appellant's
conviction for forgery.

 We overrule appellant's first issue.


 B. Legal Sufficiency: Counterfeit Nature of the Social Security Card


 In his second issue, appellant asserts that the evidence is legally insufficient
to prove that he possessed a "government instrument" as alleged in the indictment
because the evidence showed that the document appellant possessed was counterfeit. 
Appellant urges that the indictment, read as a whole, charges appellant with
possessing a genuine government instrument issued by the United States that was
"forged by some unauthorized alteration." Therefore, appellant claims that the State
was required to prove at trial that the social security card attached to the indictment
as "Exhibit A" was an authentic government instrument. We disagree.

 A writing is "forged" when one alters, makes, completes, executes, or
authenticates any writing so that it purports to be the act of another who did not
authorize the act. See Tex. Pen. Code Ann. § 32.21(a)(1)(A)(i). Additionally, a
person may violate the statute by possessing a writing that is forged with intent to
issue, transfer, register the transfer of, pass, publish, or otherwise utter the forged
writing. See id. § 32.21(a)(1)(B)(C).

 The indictment alleges that appellant forged a government instrument issued
by the United States, which purported to be the act of another who did not authorize
the act, and, further, possessed the forged instrument with intent to utter it. Thus, the
indictment sufficiently tracks the statutory language. An indictment which tracks the
statutory language proscribing conduct as penal is sufficient to charge an offense. 
Ex parte Holbrook, 609 S.W.2d 541, 543 (Tex. Crim. App. 1980). 

 Pursuant to the indictment, the State was required to prove that appellant
altered, made, completed, executed or authenticated the social security card attached
as "Exhibit A," which purported to be the act of another who did not authorize the
act. Viewing the evidence in a light most favorable to the jury's verdict, a rational
jury could have found that appellant altered, made, completed, executed or
authenticated the social security card attached to the indictment as "Exhibit A,"
which purported to be the act of the United States government, who did not authorize
it. Additionally, a rational jury could have further found that appellant possessed the
forged social security card with intent to utter it. Consequently, we cannot say the
State failed to prove the case as alleged.

 We overrule appellant's second issue.

 C. Failure to Define the Term "Instrument" in Jury Charge


 In his third issue, appellant asserts the trial court erred in failing to define the
term "instrument" in the jury charge because such term is a "term of art" that has
acquired "a technical legal meaning." Specifically, appellant suggests that the trial
court should have provided the jury with the definition of "instrument" as it appears
in section 9.102(47) of the Texas Business and Commerce Code. See Tex. Bus. &
Com. Code Ann. § 9.102(47) (Vernon Supp. 2007). (5)
 In this instance, the pertinent
portion of the jury charge reads as follows:

 . . . . Our law provides that a person commits the offense of forgery if
he forges a writing with intent to defraud or harm another. Forgery is
committed by altering, making, completing, executing, or
authenticating any writing so that it purports to be the act of another
who did not authorize that act . . . . 

 

 A writing is or purports to be:

 

 a license, certificate, permit, seal, title, letter of patent, or similar
document issued by government, by another state, or by the United
States; 


 other instruments issued by a state or national government or by
a subdivision of either . . . . 

 Terms need not be defined in the jury charge if they are not statutorily defined. 
Middleton v. State, 125 S.W.3d 450, 454 (Tex. Crim. App. 2003). Terms that have
a technical legal meaning may need to be defined, especially when there is a risk that
the jurors may arbitrarily apply their own personal definition of the term or where
a definition of the term is required to assure a fair understanding of the evidence. 
Middleton, 125 S.W.3d at 454. 

 As noted in subpart A of this opinion, the Legislature did not define the
statutory term "instrument" or the statutory phrase "other instruments issued by a
state or national government." See Tex. Pen. Code Ann. § 32.21(e)(2). Words that
are not statutorily defined are given their plain meaning. Mattox v. State, 874
S.W.2d 929, 932 (Tex. App.--Houston [1st Dist.] 1994, no pet.) (citing Heberling
v. State, 834 S.W.2d 350, 354 (Tex. Crim. App. 1992)).

 Again, the word "instrument," in the context in which it appears, is a word in
common use, its meaning clear and well understood by the ordinary person, and it
does not generally have such an involved, complicated or special meaning that
would require a definition. (6)

 Moreover, even assuming that the word "instrument" has acquired a technical
legal meaning in one context, that does not mean the term has acquired that technical
meaning in another context, or that it needs to be defined. Middleton, 125 S.W.3d
at 454 (citing Andrews v. State, 652 S.W.2d 370, 375-76 (Tex. Crim. App. 1983)). 
Nor does it mean that the term's proper definition in this context is located in the
Texas Business and Commerce Code, which concerns commercial transactions. See
Tex. Bus. & Com. Code Ann. § 1.103(a) (Vernon Supp. 2007) (providing that 
underlying purpose and policy of Code pertains to commercial transactions and
practices). Section 32.21(e) does not concern commercial transactions. It concerns
writings purported to be governmental instruments and instruments regulated by the
government such as stocks and bonds. Thus, it was not error for the trial court to
refuse to include the requested definition in the jury charge.

 Appellant's third issue is overruled.

 D. Incorrect Definition of "Writing" in Jury Charge


 In his fourth through sixth points of error, appellant asserts that the trial court
erred by submitting to the jury an incorrect definition of "writing." 

 Appellant suggests that the trial court's charge to the jury was erroneous for
three reasons. First, it did not give the statutory definition of "writing" contained in
the forgery statute. Second, it instructed that a writing is or purports to be a
government record listed in section 37.01(2)(C) of the Texas Penal Code, "thus
expanding Appellant's liability to a theory not included in the indictment." Third,
it instructed that the writing "is or purports to be" a government instrument, another
theory that appellant asserts was not pleaded in the indictment. 

 In determining whether there is reversible error due to an erroneous jury
charge, we must first decide whether error exists, and if error exists, determine
whether appellant was harmed. Middleton, 125 S.W.3d at 453. A charge must
distinctly set forth the law applicable to the case. See Tex. Code Crim. Proc. Ann.
art. 36.14 (Vernon 2005). For the purposes of the statute, "writing" includes: (1)
"printing or any other method of recording information;" (2) "money, coins, tokens,
stamps, seals, credit cards, badges, and trademarks;" and (3) "symbols of value,
right, privilege, or identification." See Tex. Pen. Code Ann. § 32.21(a)(2)(A)-(C). 
 The record reflects that the trial court submitted the following definition of
"writing" to the jury: "A writing is or purports to be (1) a license, certificate, permit,
seal, title, letter of patent, or similar document issued by government, by another
state, or by the United States, (2) other instruments issued by a state or national
government or by a subdivision of either."

 Thus, in crafting the jury charge, the trial court defined the type of writing
appellant was accused of forging for the purposes of this case, namely, a government
instrument under section 32.21(e)(2) or (3), and set forth the definitions pertinent to
that type of writing. See Tex. Penal Code Ann. § 37.01(2)(C)(3) (defining
"governmental record"); § 32.21(e)(3). Although the submitted definition is not the
definition of "writing" embodied in section 32.21(a)(2), we do not conclude that the
trial court's instruction was erroneous in this case.

 We do conclude, however, that the definition of "writing" submitted to the
jury did not expand appellant's liability to theories not pleaded in the indictment. 
The indictment alleged that appellant "forge[d] a writing, namely a government
instrument issued by the United States . . . which purported to be the act of another
who did not authorize that act . . . ." The trial court's instruction to the jury set out
the essential elements of the offense of forgery and fully instructed the jury on the
law applicable to the case. See Morris v. State, 833 S.W.2d 624, 628 (Tex.
App.--Houston [14th Dist.] 1992, no pet.) (setting forth standard for proper jury
charge). Therefore, the trial court did not err in giving the definition.

 We overrule appellant's fourth, fifth, and sixth issues.


 E. Failure to Submit Jury Instruction on Lesser-included Offense of Misdemeanor Forgery 


 In his seventh issue, appellant asserts that the trial court committed reversible
error because it failed to submit to the jury an instruction on the lesser-included
offense of misdemeanor forgery. In support of this argument, appellant asserts that
a counterfeit social security card is not among the types of documents classified as
felony grade forgery, therefore the jury should have been instructed on the lesser-included offense of misdemeanor forgery.

 As the State correctly concedes, misdemeanor forgery is a lesser-included
offense of felony forgery. Therefore, we address only the second prong of the test
set out in Hall v. State, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007)--whether
there was some evidence adduced at trial to support an instruction that appellant was
guilty only of misdemeanor forgery. Because we conclude that appellant has not
met the second prong, we conclude that the trial court did not err by failing to give
the requested instruction. Appellant did not testify at trial. Moreover, there was no
evidence presented at trial that a social security card was not a government
instrument as defined by section 32.21(e). Therefore, appellant was not entitled to
an instruction on the lesser charge of misdemeanor forgery.

 We overrule appellant's seventh issue.




III. Conclusion


 We affirm the judgment of the trial court.



 

 Sue Lagarde

 Justice

Panel consists of Justices Keyes, Alcala, and Lagarde. (7)

Publish. See Tex. R. App. P. 47.2 (b).




1. According to section 37.01(2)(C) of the Texas Penal Code, to which section 32.21
refers, "governmental record" means: (1) "anything belonging to, received by, or kept
by government for information, including a court record"; (2) "anything required by
law to be kept by others for information of government"; (3) "a license, certificate,
permit, seal, title, letter of patent, or similar document issued by government, by
another state, or by the United States"; (4) "a standard proof of motor vehicle liability
insurance form described by Section 601.081, Transportation Code, a certificate of
an insurance company described by Section 601.083 of that code, a document
purporting to be such a form or certificate that is not issued by an insurer authorized
to write motor vehicle liability insurance in this state, an electronic submission in a
form described by Section 502.153(i), Transportation Code, or an evidence of
financial responsibility described by Section 601.053 of that code"; (5) "an official
ballot or other election record"; or (6) "the written documentation a mobile food unit
is required to obtain under Section 437.0074, Health and Safety Code." Tex. Pen.
Code Ann. § 37.01(2)(A)-(F) (Vernon Supp. 2007).
2. The issue of whether a social security card constitutes an "instrument[] issued by a
state or national government" appears to be one of first impression.
3. This Court has held that a social security card is a "government record" for the
purposes of the forgery statute. See Lopez v. State, 25 S.W.3d 926, 929 (Tex.
App.--Houston [1st Dist.] 2000, no pet.) (holding social security card is "certificate
issued by the United States," and therefore is a "governmental record" as defined by
Tex. Pen. Code §37.01(2)(C).).
4. Among the many definitions of "instrument" offered by the parties are: (1) "anything
reduced to writing, a document of a formal or solemn character, a writing given as a
means of affording evidence." Black's Law Dictionary, 801 (6th ed. 1990); (2)
"[a] writing, as the means of giving formal expression to some act." Random House
Webster's Unabridged Dictionary 800 (2d ed. 2001); (3) "a formal document."
Webster's New World Dictionary and Thesaurus 323 (1996). Appellant also
offers a statutory definition of "instrument" from section 9.102(47) of the Texas
Business and Commerce Code. Tex. Bus. & Com. Code Ann. §9.102(47) (Vernon
Supp. 2007).
5. The Texas Business and Commerce Code defines "instrument" as "a negotiable
instrument or any other writing that evidences a right to the payment of a monetary
obligation, is not itself a security agreement or lease, and is of a type that in ordinary
course of business is transferred by delivery with any necessary indorsement or
assignment . . . ." Tex. Bus. & Com. Code Ann. § 9.102(47) (Vernon Supp. 2007).

6. See discussion supra Part II.A.
7. The Honorable Sue Lagarde, retired Justice, Fifth Court of Appeals, participating by
assignment.