

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00028-CR

GUY BERNARD MUNSCH, II A/K/A
GUY BERNARD MUNSCH

APPELLANT

V.

THE STATE OF TEXAS

STATE

----------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
### TRIAL COURT NO. CR11798

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Guy Bernard Munsch, II a/k/a Guy Bernard Munsch appeals his convictions for possession with the intent to distribute methamphetamine in the amount of more than four grams but less than 200 grams and tampering with

---

[1]*See* Tex. R. App. P. 47.4.

physical evidence.  In four issues, Munsch argues that the evidence is insufficient to support that he tampered with physical evidence, that the evidence is insufficient to support the jury's finding that he possessed more than four grams of methamphetamine, and that the trial court erred by allowing the State to introduce evidence found on his cell phones.  We will affirm.[2]

## II. BACKGROUND

City of Granbury police officer Richard Branum testified that on October 18, 2010, at roughly 10:00 p.m., he initiated a traffic stop of a white Mitsubishi 3000GT.  According to Branum, the vehicle was speeding.  Branum's in-car camera recorded the stop.  Branum averred that the vehicle did not immediately pull over. Instead, the vehicle "slowed down a little bit and just continued" for "several blocks."  After the car finally pulled over, Branum made contact with the driver, Jennifer Comadoll.  By Branum's account, Comadoll emitted the "odor of an alcoholic beverage" from her person and she had a "wet spot" in her lap.  Branum also noticed that Munsch, the passenger in the car, "was kind of raised up out of his seat and . . . appeared to be putting something in his pocket."  Branum said that when Munsch saw him, Munsch turned away from him and pulled his hand out of his pocket.  This conduct raised Branum's suspicion that Munsch was "trying to conceal something."  At that time, other officers arrived on the scene.

---

[2]This cause was assigned for writing to the author on January 31, 2014.

2

Branum asked Comadoll to step out of the car, and by Branum's recollection, Comadoll appeared extremely nervous, was shaking, and "was talking real fast and back and forth on things." As Branum attended Comadoll, Officer John Whitefield removed Munsch from the vehicle and patted him down. As he removed Munsch from the car, Whitefield saw a taped-up baseball bat. Branum testified that Whitefield then searched Munsch's person and removed several items from Munsch's pockets, including digital scales that Branum averred are used for weighing methamphetamine, a straw with methamphetamine residue in it, $250 cash, and "dope notes." The digital scales are the design, size, and shape of a cigarette package, which when closed would appear to be a cigarette pack but when opened reveal digital scales.

Through questioning, Branum explained the significance of the dope notes and averred that several of the entries on these notes included street lingo for amounts of charges and credits relating to the sale of methamphetamine. Branum also said that Munsch's response to questions concerning the dope notes was that they belonged to a friend and not him. The State played a portion of the video captured by Branum's in-car camera for the jury, and at one point Branum states to Munsch that his "dope notes" read "six grams at $40 equals $240," to which Munsch can be heard responding, "those aren't mine, that's not even my writing."

After seeing these items, Branum again searched Munsch's person and discovered a baggie containing a small amount of methamphetamine in the coin

3

pocket of Munsch's pants. Branum said that upon discovering the baggie, Munsch's reaction was to "drop[] his head" and admit that the baggie contained a "cut" of methamphetamine. In part of the video played for the jury, Munsch can be heard saying these things. He also responded to Branum's question of "what is [Comadoll's] involvement in this" with "she doesn't have none; she didn't know I had anything." Munsch can be heard explaining that "what that [small amount of methamphetamine found in his pocket] was, I was supposed to go back and show somebody that." Munsch said that he had gotten it from a guy named J.J.

As to Comadoll, Branum testified that after discovering prescription pills that she did not have a prescription for in her wallet, he arrested Comadoll for possession of a dangerous drug and suspicion of driving while intoxicated. After he placed her in his car for transportation to jail, Comadoll told Branum that she knew something about Munsch, that she feared Munsch, and that if Branum could ensure that Munsch would not find out, they could return to her vehicle and she would reveal further information regarding Munsch's arrest.

Branum radioed both the jail and Whitefield, who was still at the scene and about to transport Munsch to jail, and asked that Whitefield take Munsch to the jail and that neither Whitefield nor anyone at the jail reveal to Munsch that he and Comadoll were returning to her vehicle for further investigation into Munsch's charges. Branum also called another officer to tell him to return to Comadoll's vehicle because "there was a possibility of more items on the side of the road."

4

Again, a portion of Branum's in-car video was played for the jury. In this portion of the video, Comadoll is handcuffed in the backseat of Branum's patrol vehicle, and as he began to transport her, she can be heard saying that she wanted to tell him something but that she was fearful of Munsch. Comadoll can also be heard saying that Munsch had instructed her to not immediately pull over when Branum initiated his stop; that when they finally did stop, he had thrown "eighteen grams of methamphetamine" out of the car window; and that she knew what it was because as he threw the package, he told her what it was.

Comadoll described the package as being a "clear . . . [baggie]." In the video, Branum can be heard radioing to other officers that Munsch had "supposedly" thrown eighteen grams of methamphetamine out of the window. Comadoll can be heard stating, "I can't believe you didn't see him [make the throw]," to which Branum retorts that he was focused on the driver's side, why she did not immediately pull over, and that he could not see the passenger side. Branum then inquired more about how Munsch had discarded the drugs, and Comadoll said that he had thrown the baggie about "ten or fifteen feet" out from the passenger-side window. She explained that Munsch originally had it in his pocket and that he had pulled it out when Branum initiated his stop, and she can be heard affirming Branum's question of "is that why he was messing around [in his seat] when [Branum] stopped [them]." She also said that Munsch possessing and then throwing the methamphetamine out the window was a surprise to her and the reason for her being "a nervous wreck" when Branum approached her.

5

Upon their return to her vehicle, Branum found and had another officer photograph a large baggie of methamphetamine in the ditch "in a 90-degree angle from the road" where the traffic stop occurred. A video of Branum's difficulty in finding the baggie in the dark of night was played for the jury, and photographs of the location of the baggie were published to the jury as well. The contents of the two baggies (the smaller one from Munsch's pocket and the larger one found roadside) were later weighed and tested, and lab results determined that the net weight of both baggies totaled 16.94 grams of methamphetamine.

While he was completing his report, Branum said that jailhouse officer Dusty Wren messaged him that Munsch was on the phone telling a "guy to go to Page's house and move the wood by [the] shed, if you know what I mean[?]" The audio of this jailhouse telephone call was played for the jury. In the audio, Munsch can be heard having a dialogue with another man. Munsch can be heard stating, "They didn't find nothing on me." The guy on the other line can be heard stating at one point, "I hope you were smart enough to not . . . you know . . . package it." Later in the call, as Munsch says that it is impossible that his charge could be for possession in the range of four to 200 grams, the man on the other end says, "I hope you're not that stupid."

As Wren had indicated to Branum in his message, Munsch can be heard stating, "Somebody needs to go to Page's house and move that firewood by the garage, that way [] that job is done." Later, he repeats himself and says,

6

"Remember what I said; make sure someone moves that firewood," at which point the man on the other end of the line starts loudly and abruptly saying, "Yeah, yeah, yeah." Munsch also says to him, "I believe you know what to do." The man then instructs Munsch, "You be good in there. I do mean be good in there. . . . I'm just telling you, you be good in there though. Behave. . . . You might run into somebody I know in there." Munsch can be heard saying, "I'm not saying nothing to anybody." And then Munsch asks the man, "You feel me?" Later in the call, the man asks Munsch, "Did you make a phone call or anything stupid before ya'll got in trouble?" As Munsch tells the man that the jailers are taking the phone from him, the man again instructs Munsch, "Be good!"

The State introduced evidence that the jailhouse phone call was made to a phone number found on one of Munsch's cell phones. The log from the cell phone indicates the number belonged to a "Jj Josh." The State also introduced a copy of a letter Munsch wrote and sent to a person named "J.J." while Munsch was in jail. In the letter, Munsch states that he knows Comadoll is a "snich" [sic] because he had "seen the video[] of her in the back of the cop car! Telling the police!" The State further introduced a log containing the contents of texts found on one of Munsch's cell phones. The texts included references to marijuana, "cut"—a reference to substances known to dilute narcotics for the purposes of making a larger profit, and references to drug paraphernalia. There was also a text message from "Jj Josh" stating to Munsch, "[C]all me when [you're trying] it[,] [okay]?" Another text from Jj Josh to Munsch says, "Julie has a little note [to] call

7

her man[.] [S]he [is willing] to meet." There is also an entry in the "dope notes" found on Munsch for a "Jule old Bitch." The texts also have multiple references to "samples." And one text states, "My package is still MIA. Three peeps have called for it. Help me help you, you come." Branum testified that these texts were references to the sale of drugs.

The jury found Munsch guilty of possession of methamphetamine with the intent to deliver an amount between four and 200 grams and also guilty of tampering with physical evidence. The jury assessed punishment at sixty years' incarceration and a $7,500 fine for the possession charge and punishment at twenty years' incarceration and a $5,000 fine for the tampering charge. The trial court entered judgments accordingly, and this appeal followed.

## III. DISCUSSION

### A. Contents of Munsch's Cell Phone

In his third and fourth issues, Munsch argues that the trial court erred by allowing the State to introduce the contents of text messages stored on his cell phone, evidence that officers obtained without a warrant. Munsch asks this court to treat his single in-trial objection to the introduction of this evidence as a motion to suppress when analyzing this issue. We conclude that Munsch failed to preserve any alleged error for our review because his isolated in-court objection

8

in front of the jury did not serve as a motion to suppress and because he did not object to this evidence each time it was admitted into evidence.[3]

As a general rule, a motion to suppress will preserve error in the admission of evidence without further objection at trial if the motion is overruled by the court following a pretrial hearing. *Garza v. State*, 126 S.W.3d 79, 84 (Tex. Crim. App. 2004). But when, as here, the trial court does not hold a pretrial hearing on the motion, the defendant must make a timely objection to the evidence when it is offered at trial in order to preserve error. *Ross v. State*, 678 S.W.2d 491, 493 (Tex. Crim. App. 1984). Even constitutional errors may be waived by failure to object at trial. *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). Further, "a party must object each time the inadmissible evidence is offered or obtain a running objection. An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003).

Here, Munsch did not lodge an objection regarding the State's introduction of these texts from his cell phone until the State introduced this evidence at trial. His objection was made in the presence of the jury, and it merely stated, "Object, your honor. No warrant for search the cell phone." *See Black v. State*, 358

---

[3]The State has not argued that Munsch failed to preserve his complaint that the text messages from his cell phone should have been excluded as based on an improper warrantless search in violation of the Fourth Amendment, but we have an independent duty to ensure that a complaint was preserved before addressing its merits. *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010).

9

S.W.3d 823, 829 (Tex. App.—Fort Worth 2012, pet ref'd) ("Nothing in [Appellant's] objection would have suggested to the trial court that he was lodging a motion to suppress. Nor did any suppression hearing occur outside the presence of the jury."). Further, Munsch did not continue to object to this evidence at the other times the State introduced or questioned witnesses about it. Indeed, the State introduced evidence of the contents of Munsch's cell phone via a document that is a purported summary of the text messages found on the phone, through the lengthy testimony by the arresting officer who explained the significance of the street-lingo used in the texts, and through the officer who booked Munsch into jail after he was arrested. *See id.* ("Because Appellant's objection to the evidence did not rise to the level of a motion to suppress, we hold that Appellant was required to request a running objection or to object to each reference to the sheet of notebook paper or its contents."). Because Munsch did not object to the numerous references to these texts nor seek or obtain a running objection, he forfeited any error for our review. Thus, we overrule Munsch's third and fourth issues.

### B. Comadoll Was Not an Accomplice Witness at Trial

In his second issue, Munsch challenges the sufficiency of the evidence to support his conviction for possession of a controlled substance, methamphetamine, with intent to deliver more than four grams but less than 200 grams. Specifically, Munsch argues that "the only suggestion that the additional drugs belonged to Munsch came from [] Comadoll, at minimum an accomplice

10

witness who was driving the vehicle Munsch was in when pulled over." Munsch asks this court to conduct an accomplice-witness-testimony analysis and eliminate evidence of the methamphetamine that Comadoll informed Branum of once he placed her in his patrol vehicle. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005) ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed."). But as the State points out and Munsch seems to concede, Comadoll did not testify at trial, and the accomplice-witness-testimony rule applies only to in-court testimony. *See Bingham v. State*, 913 S.W.2d 208, 211 (Tex. Crim. App. 1995) (op. on reh'g) (only in-court accomplice testimony is subject to the article 38.14 requirement of corroboration.). Because Comadoll did not testify at trial, the accomplice-witness-testimony rule does not apply in this case. We overrule Munsch's second issue.

### C. Tampering with Evidence

In his first issue, Munsch argues that the evidence is insufficient to support his conviction for tampering with evidence. There seem to be two distinct arguments within Munsch's first issue. In part of this issue, Munsch argues that the State failed to plead prohibited conduct under the tampering statute. Specifically, Munsch argues that the State's indictment, which alleged that Munsch "thr[e]w a bag containing a purported controlled substance from the vehicle [Munsch] occupied," failed to allege a statutory means of the tampering element for this offense. In the remainder of this issue, Munsch argues that the

11

evidence is insufficient to support his conviction for tampering with evidence. We disagree with both of these arguments.

Section 37.09(a)(1) of the Texas Penal Code defines the offense of tampering with physical evidence with three elements: (1) Knowing that an investigation or official proceeding is pending or in progress; (2) a person alters, destroys, or conceals any record, document, or thing; (3) with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding. *See* Tex. Penal Code Ann. § 37.09(a)(1) (West 2011 & Supp. 2014); *see also Williams v. State*, 270 S.W.3d 140, 142 (Tex. Crim. App. 2008).

### 1. *The State Pleaded a Means of Tampering*

In part of his first issue, Munsch argues that the State failed to allege a manner of violating the "alters, destroys, or conceals" element to the tampering statute because instead of stating one of these general categories in the indictment, the State chose to use the specific language that Munsch "thr[e]w a bag containing a purported controlled substance from the vehicle" he occupied. Tex. Penal Code Ann. § 37.09(a)(1).

An indictment can be legally sufficient without tracking the exact words of the statute which delineates the offense so long as the language used conveys the same meaning as the statute. *See Tucker v. State*, 751 S.W.2d 919, 922 (Tex. App.—Fort Worth 1988, pet ref'd); *see also King v. State*, 675 S.W.2d 514, 516 (Tex. Crim. App. 1984).

12

In this case, although not the exact words of the statute, the language used in the indictment, "throw a bag containing a purported controlled substance from the vehicle" conveyed the same meaning as the statutory word "conceal[.]" *See Thornton v. State*, 425 S.W.3d 289 (Tex. Crim. App. 2014) (reasoning that "conceal" under section 37.09(a) includes the concepts to throw it, bury it, cover it, hide it, place it out of sight, or otherwise affirmatively attempt to conceal evidence); *see also Rotenberry v. State*, 245 S.W.3d 583, 589 (Tex. App.—Fort Worth 2007, pet. ref'd) (reasoning that "conceal" means "[t]he act of removing from sight or notice; hiding."); *Ramos v. State*, 264 S.W.3d 743, 751 (Tex. App.—Houston [1st Dist.] 2008) *aff'd*, 303 S.W.3d 302 (Tex. Crim. App. 2009) ("[s]tated differently, the indictment alleged facts that if proved would establish the forgery of an 'instrument . . . issued by the state or national government or a subdivision thereof.'").

We conclude that the words used by the State in the indictment in this case were the equivalent of the statutory word "conceal." *See Maedgen v. State*, 132 Tex. Crim. 397, 401, 104 S.W.2d 518, 520 (1937) (holding if words not in statute are substituted for those which are, indictment is sufficient if words so substituted are equivalent to those used in the statute); *see also Adegbenro v. State*, 36 S.W.3d 658, 660 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (holding language used in indictment for commercial bribery conveyed same meaning as statutory words, despite difference in the language.) We overrule this portion of Munsch's first issue.

## 2.      Sufficiency of the Evidence

In the remainder of his first issue, Munsch challenges the sufficiency of the evidence to support the jury's verdict that he tampered with evidence. We disagree.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex.

14

Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (*citing Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Byrd*, 336 S.W.3d at 246. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013); *Curry v. State*, 30 S.W.3d 394, 404–05 (Tex. Crim. App. 2000).

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Winfrey*, 393 S.W.3d at 771; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

15

In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

Here, we are satisfied that the evidence, viewed in the light most favorable to the verdict, is sufficient to support a jury finding that Munsch, knowing an investigation was ongoing, harbored the specific intent to conceal the larger baggie of methamphetamine and thereby impair its later availability as evidence.

The jury heard evidence that Comadoll and Munsch were in a vehicle being investigated for speeding after Branum initiated his overhead lights in an attempt to stop the vehicle they occupied. Further, the jury heard evidence that as the traffic stop occurred, Munsch instructed Comadoll to delay pulling over. As she delayed pulling over, Munsch removed the larger baggie of methamphetamine from his pocket, and as Comadoll eventually did come to a stop, Munsch threw the baggie out of the passenger-side window at a 90-degree angle, some ten to fifteen feet away from the vehicle. Branum testified that when he encountered Munsch, he was positioned in a suspicious manner, pulling his hand from his pocket. The State presented evidence via video in which Comadoll can be heard affirming that Munsch was in this posture because he had just removed the methamphetamine from his pocket and tossed it out the window. Branum testified that when Munsch saw him, Munsch turned away.

16

*See Brown v. State*, No. 08-05-00340-CR, 2007 WL 1404423, at *4 (Tex. App.—El Paso May 10, 2007, no pet.) (mem. op., not designated for publication) ("Appellant's failure to make eye contact as he left the loading area was evidence of his consciousness of guilt.").

Moreover, Munsch did in fact conceal the methamphetamine from Branum and the other officers during the traffic stop. Had Comadoll not volunteered the information that Munsch had thrown the methamphetamine out of the window, Branum may have never returned to locate it. The jury watched video of Branum's return to look for the methamphetamine, and even then, Branum had difficulty locating it with his flashlight given the darkness of night.

The State further presented video evidence of Comadoll's delayed stop from Branum's perspective, and the State provided photographic evidence of the vehicle and its location to the discarded baggie. The State also presented evidence that after Munsch learned that police had recovered the methamphetamine due to Comadoll's assistance, Munsch referred to Comadoll as a snitch and wrote that she had "[told] the police." The reasonable inference from this evidence is that Munsch believed that Comadoll had told the police that he had thrown the methamphetamine out of the window that night. Furthermore, the jury heard audio of a telephone call in which Munsch can be heard saying, "They didn't find nothing on me." A reasonable inference from this statement is that Munsch had discarded the bigger baggie of methamphetamine from his person that night and that was the reason police did not find it on his person.

17

Based on this record, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that Munsch, knowing that an investigatory traffic stop was in progress, threw the larger baggie of methamphetamine out of the passenger-side window with the intent to impair its availability as evidence. *See Thornton*, 425 S.W.3d at 303 (holding sufficient evidence existed for attempted tampering conviction when defendant removed a crack pipe from his pocket, cupped it in his hand to avoid detection, and discarded it during an encounter with police during the dimly lit early morning hours). We overrule the remainder of Munsch's first issue.

## IV. CONCLUSION

Having overruled all four of Munsch's issues on appeal, we affirm the trial court's judgments.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: GARDNER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 21, 2014

18