

# NUMBER 13-19-00420-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOSEPH TAMEZ,                                                         **Appellant,**

**v.**

THE STATE OF TEXAS,                                                 **Appellee.**

### On appeal from the 148th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina**
**Memorandum Opinion by Justice Longoria**

In August 2019, a jury found appellant Joseph Tamez guilty of continuous sexual assault of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 21.02. Tamez was sentenced to forty years' imprisonment in the Correctional Institutions Division of the Texas Department of Criminal Justice. On appeal, Tamez alleges the jury charge contained error resulting in egregious harm as it: (1) allowed him to be convicted of

continuous sexual assault of a child based on a single predicate offense; and (2) improperly defined the mental states applicable to the predicate offenses. We affirm.

## I. BACKGROUND

Tamez was indicted for continuous sexual abuse of a child. *See id.* The indictment alleged

> [Tamez], [did] then and there in Nueces County, Texas, during a period that was 30 days or more in duration, to-wit: from on or about April 5, 2015 through March 19, 2016, when [Tamez] was 17 years of age or older, commit two or more acts of sexual abuse against [C.L.[1]], a child younger than 14 years of age, namely:
>
> Indecency with a child under section 21.11(a)(1), namely, did then and there with the intent to arouse or gratify the sexual desire of [Tamez], engage in sexual contact with [C.L.], hereafter styled the complainant, by touching the female sexual organ of the complainant, a child younger than 14 years of age,
>
> AND/OR
>
> Aggravated Sexual Assault of a Child under section 22.021, namely, did then and there intentionally or knowingly caus[e] the penetration of the female sexual organ of [C.L.], a child who was then and there younger than 14 years of age, by [Tamez's] sexual organ, against the peace and dignity of the State.

At trial, V.G. testified that she had previously been married to Tamez, and C.L. is her daughter from a previous relationship. She and Tamez had two children together, E.T. and P.T. The family lived together in Corpus Christi. V.G. staetd that she worked night shifts at a hospital and Tamez would stay home to care for the children.

V.G. explained that on March 19, 2016, she and Tamez were laying in bed with

---

[1] We refer to the minor victim, her mother, and her siblings by initials to protect their identities. *See* TEX. R. APP. P. 9.8(b)(2).

E.T. and P.T. in the master bedroom when V.G. suggested that the children leave the room to play video games and E.T. refused, stating: "Every time we go play the game [Tamez] and [C.L.] lock the door." After E.T. and P.T. left the room, V.G. confronted Tamez about what E.T. meant by her statement, and Tamez told her that C.L. sometimes used the master bedroom to "get away from the kids" and "to watch T.V." C.L. was at her grandfather's house when this conversation took place.

According to V.G., when C.L. returned later that day, V.G. asked her about E.T.'s statement. C.L. initially denied anything had happened, but, with Tamez present, V.G. directly asked C.L. if Tamez "was doing something to her that he wasn't supposed to be doing," and C.L. said "yes." V.G. stated that C.L. told her that Tamez "would have sex with her" when V.G. was at work. Upon hearing this, V.G. called her stepmother and had her call the police so that Tamez did not hear her on the phone with the police. The police arrived and arrested Tamez. V.G. was instructed to take C.L. for a sexual assault nurse examination (SANE) and to the Children's Advocacy Center (CAC). V.G. admitted that after his arrest, she saw Tamez when "bills were due" and continued to have sexual relations with him.

C.L. testified that Tamez first began sexually assaulting her when she was in the third grade, about eight years of age. She explained that the first time it happened, she was watching television with her siblings and Tamez told her to go to his room. She complied, but Tamez still grabbed her by the wrist and took her to the room. When she got into the room, he locked the door, "threw [her] on the bed," and "forced [her] clothes off," though she tried to keep them on. Tamez then began touching "[her] chest, [her]

3

middle area, and [her] back." C.L. explained that she referred to the area "where [she] usually use[s] the bathroom" to "pee" as her "middle area." C.L. said Tamez then got on top of her and "took out his middle part as well and started touching [her] with that" on the "inside" and "outside" of her "middle part." When Tamez stopped, he told her "to get up and go get in the shower," which she did. C.L. stated that it happened "every day whenever [her mother] was at work" starting when she was in third grade and stopping when she was in fourth grade. C.L. also detailed a time that Tamez made her "rub" his "middle part" while in the restroom and another time when Tamez made her get on top of him, and "his middle part was in [hers] and he would slide his hands down [her] back to [her] butt." She recalled he would put a "kind of plastic" on his "middle part" that was "see through." She has since learned that what she saw was a condom, and Tamez would flush it down the toilet after. Tamez told her not to tell her mother. C.L. did not tell anyone what had happened because she was afraid to get in trouble or that Tamez would "hurt [her] or them."

Once she told her mother what was happening, the police arrested Tamez. She recalled seeing a nurse at the hospital for an examination and talking to a counselor at the CAC about what happened. She filled out diagrams of the male and female bodies to explain where Tamez touched her.

Tamez testified that he has denied the allegations from the start. He stated that he never touched C.L. inappropriately, that the accusations made him "uncomfortable, very shocked, very, very emotional," and he questioned why he would be accused of the things C.L. asserted. He testified that there had been a time that he and C.L. were in his bedroom

4

with the door locked, but it was because C.L. wanted to get her cell phone back after being punished and having it taken away.

Tamez explained his relationship with V.G. was good, but she often gave him "ultimatums" and threatened to leave and take the children away from him. He testified that V.G. was manipulative and would lie to get her way. Both Tamez and V.G. testified that they got married because V.G. gave him an ultimatum.

Tamez was convicted of continuous sexual assault of a child, and the trial court sentenced him to forty years' imprisonment. Tamez filed a motion for new trial which was denied, and this appeal followed.

## II.    JURY CHARGE

In two issues, Tamez alleges that the jury charge contained error resulting in egregious harm. First, Tamez argues that the jury charge allowed the jury to convict him for "a series of abuses" based on a single predicate offense. He also contends that the charge incorrectly defined the culpable mental states applicable to the offense for which he was charged.

### A.    Standard of Review

Our first duty in analyzing an alleged jury-charge error is to determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, then the standard of review for assessing harm "depends on whether the error was preserved." *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020) (citing *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020)); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Where, as here, error was not preserved with a timely

5

objection, such error is only reversible if we determine the error "caused the defendant 'egregious harm.'" *Gonzalez*, 610 S.W.3d at 27. "Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory." *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

## B.      Continuous Sexual Abuse

Texas Penal Code § 21.02(b) provides:

(b)      A person commits an offense if:

(1)      during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2)      at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is:

(A)      a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense; or

(B)      a disabled individual.

TEX. PENAL CODE ANN. § 21.02. Aligned with the indictment, the jury charge instructed the jury, in relevant part, that:

You must determine whether the state has proved, beyond a reasonable doubt, four elements. The elements are that—

1.      [Tamez], in Nueces County, Texas, during a period between on or about April 5, 2015 through March 19, 2016, committed two or more of the following alleged acts of sexual abuse:

1.      did, with the intent to arouse or gratify the sexual desire of [Tamez], engage in sexual contact with [C.L.] by touching the female sexual organ of [C.L.]; AND/OR

6

2. did intentionally or knowingly cause the penetration of the female sexual organ of [C.L.] by [Tamez's] sexual organ

2. these acts were committed during a period that was thirty or more days in duration; and

3. at the time of commission of each of the acts of sexual abuse [Tamez] was seventeen years old or older; and

4. at the time of commission of each of the acts of sexual abuse the victim, [C.L.], was a child younger than fourteen years old.

You must all agree on elements 1, 2, 3, and 4 listed above. With regard to element 1, you need not all agree on which specific acts of sexual abuse were committed by [Tamez] or the exact date when those acts were committed. You must, however, all agree that [Tamez] committed two or more acts of sexual abuse. With regard to element 2, you must all agree that at least thirty days passed between the first and last acts of sexual abuse committed by [Tamez].

Tamez asserts that the jury charge allowed the jury to convict him based on one alleged offense because it "lack[ed] a specific manner and means for the indecency predicate offense, authorize[d] conviction based on an instance of indecency by touching [C.L.'s] female sexual organ with [Tamez's] sexual organ, and an instance of aggravated sexual assault by penetration of [C.L.'s] female sexual organ by [Tamez's] sexual organ." Tamez's argument in this regard focuses solely on one occasion of abuse testified to by C.L.—the first instance of sexual abuse she discussed. Specifically, it appears his contention is that without a specified manner and means for the indecency offense, the jury would have been able to convict him for both indecency with a child and aggravated sexual assault for one instance of abuse. The charge, however, instructs the jury to find Tamez guilty only if the jury agrees that he committed two or more acts with at least thirty days between the first and last acts. This instruction requires the jury to find Tamez

7

committed two, separate acts of sexual abuse at least thirty days apart. The language of the charge, therefore, tracks the penal code and requires the jury to find that Tamez committed multiple acts over a course of more than thirty days; it does not allow for the jury to convict Tamez for one predicate offense. *See* TEX. PENAL CODE ANN. § 21.02; *Ramos v. State*, 264 S.W.3d 743, 754 (Tex. App.—Houston [1st Dist.] 2008), *aff'd*, 303 S.W.3d 302 (Tex. Crim. App. 2009) (finding no error in the charge where the jury charge set out the essential elements of the charged offense).

Tamez also alleges that the charge violated the Double Jeopardy Clause of the Fifth Amendment as it allowed him to be punished for both a greater and lesser included offense. *See Bien v. State*, 550 S.W.3d 180, 184–85 (Tex. Crim. App. 2018). The Double Jeopardy Clause of the Fifth Amendment, which is applicable to the states through the Fourteenth Amendment, protects a person from multiple punishments for the same offense. U.S. CONST. amends. V, XIV; *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014). "In the multiple-punishments context, two offenses may be the same if one offense stands in relation to the other as a lesser-included offense, or if the two offenses are defined under distinct statutory provisions but the Legislature has made it clear that only one punishment is intended." *Littrell v. State*, 271 S.W.3d 273, 275–76 (Tex. Crim. App. 2008); *Carmichael v. State*, 505 S.W.3d 95, 100 (Tex. App.—San Antonio 2016, pet. ref'd). Tamez however, was convicted of and received one punishment for the single offense of continuous sexual abuse of a child.

Accordingly, the trial court did not err in its submission of the jury charge as it relates to the application of the law. *See Gonzalez*, 610 S.W.3d at 27. We overrule

8

Tamez's first issue.

## C.     Mental State Definitions

Tamez also complains that the jury charge improperly defined the mental states applicable to the predicate offenses. Specifically, he states that the jury charge provides the definitions of "intentionally" and "knowingly" in a "result of conduct" fashion rather than a "nature of conduct" fashion as the charges against him required.

The Texas Court of Criminal Appeals has explicitly stated that aggravated sexual assault is a "nature-of-conduct" statute. *Gonzales v. State*, 304 S.W.3d 838, 849 (Tex. Crim. App. 2010). Accordingly, the jury charge should have defined the terms as follows:

> A person acts intentionally with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct. A person acts knowingly with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.

*See* TEX. PENAL CODE ANN. § 6.03(a), (b). Instead, the charge defined the terms as follows:

> A person acts "intentionally," or with "intent," with respect [to] a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> A person acts "knowingly," or with 'knowledge," with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*See id.*

Even if we assume, without deciding, that there is error in the jury charge related to the mental state definitions, Tamez did not suffer egregious harm. At trial, Tamez did not contest his culpable mental state; instead, he denied any touching or penetration of C.L. Therefore, an erroneous instruction of the culpable mental state could not

9

egregiously harm him. *See Jones v. State*, 229 S.W.3d 489, 494 (Tex. App.—Texarkana 2007, no pet.) (holding that the defendant's intent, "while . . . a part of the State's required proof, was not a contested issue and consequently [the defendant] could not be egregiously harmed by the definition of the intentional and knowing state of mind"); *see also Martinez v. State*, No. 11-13-00080-CR, 2015 WL 1322315, at *6 (Tex. App.—Eastland Mar. 20, 2015, pet. ref'd) (mem. op., not designated for publication) (finding defendant was not egregiously harmed where the jury charge contained the "result of conduct" rather than "nature of conduct" definitions in an aggravated sexual assault case because the defendant did not contest intent, but rather denied the allegations against him).

Additionally, if there is error in the jury charge, we "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge" to determine egregious harm. *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995) (quoting *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994)) (internal quotation marks omitted). Even if the definitions of intentionally and knowingly were erroneous, the application section correctly instructs the jury because it tracks the language of the statute. *See* TEX. PENAL CODE ANN. § 21.02. This supports a finding of no egregious harm. *See Reed v. State*, 421 S.W.3d 24, 30 (Tex. App.—Waco 2013, pet. ref'd) ("When the application paragraph correctly instructs the jury on the law applicable to the case, this [militates] against a finding of egregious harm."); *see also Martinez*, 2015 WL 1322315, at *6. We hold that, even if the definitions contained errors, those errors did not egregiously harm Tamez. *See Ngo*, 175 S.W.3d at 743–44; *Reed*, 421 S.W.3d at 30;

10

*Jones*, 229 S.W.3d at 494; *see also* TEX. R. APP. P. 44.2 (standard for reversible error in criminal cases). We overrule Tamez's second issue.

### III. CONCLUSION

We affirm the judgment of the trial court.[2]

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
17th day of March, 2022.

---

[2] Currently pending before this Court are two motions: (1) attorney Guy Williams's motion to withdraw as counsel, and (2) attorney Travis Berry's motion to withdraw as counsel. Williams was appointed to represent appellant on September 12, 2019, and filed a brief on behalf of Tamez, in which he sought to withdraw. On June 3, 2021, this Court abated this matter for a determination of whether new counsel should be appointed to Tamez given a potential conflict of interest raised regarding Williams's representation. The trial court appointed new counsel, replacing Williams in this matter. Subsequently, appointed counsel withdrew and was replaced by Berry. Berry subsequently sought to withdraw, and the trial court appointed new counsel who filed a brief on the merits on behalf of Tamez. Accordingly, we grant Williams's and Berry's motions to withdraw.